**In the Matter of Charles Tilton MASTON, Debtor.**

**Paul D. GILBERT, Trustee/Plaintiff,**

**v.**

**Eugene S. MASTON and Charles T. Maston, Defendants.**

**Bankruptcy No. 3–83–02505. Adv. No. 3–84–0044.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Dec. 6, 1984.

Jack H. Berger, Kettering, Ohio, for debtor.

Paul D. Gilbert, Dayton, Ohio, Trustee.

DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

Charles Tilton Maston aka Charles T. Maston and Chuck Maston filed a voluntary petition for relief on 21 October 1983.

The Debtor scheduled no secured creditors, and unsecured creditors in the total amount of $15,615.67. Of this total amount, all but $615.67 represents a personal injury judgment rendered by a state court on April 5, 1982, in favor of Dwayne Randall Taylor and Trudy Jarrett. The other creditors scheduled represent debts incurred between the dates of December, 1978, and July, 1982.

This matter is before the Court upon a complaint filed on 24 February 1984 by Paul D. Gilbert, Trustee in bankruptcy, to

recover as a fraudulent conveyance under Ohio Revised Code § 1336.04 property conveyed by debtor, Charles T. Maston, to his father, Eugene S. Maston.

A pretrial hearing was held on April 19, 1984, and the trial was held on September 7, 1984, after several continuances had been granted. No briefs have been submitted.

The following facts are taken from the pleadings, stipulations at the pretrial hearing, and the testimony and exhibits adduced at the trial.

Debtor, Charles T. Maston, inherited a one-quarter interest in the family home and surrounding property, located in Centerville, Ohio, upon the death of his mother in 1974. He lived at times at this residence with his father, Eugene, until 1980, when he moved out. However, in August of 1981, he moved back into the house because of financial difficulties arising from injuries received in an accident, loss of regular employment and legal expenses arising in a criminal case, in "order to make ends meet." He moved back intermittently during 1982.

Until 1974 Charles had worked for Centerville Builders. Since then he has not had steady employment. He testified his net income for 1983 was about $4200.00.

On June 15, 1979, Charles was involved in an automobile accident for which a lawsuit was commenced against him on August 25, 1980 seeking $100,000.00 in damages. In April, 1982, a $15,000.00 tort judgment was rendered therein against him.

On the 2nd or 3rd of March, 1981, Charles conveyed his one-quarter interest in the property, to his father. A copy of an undated, hand written agreement was submitted at the trial by the Trustee. It provides, as follows:

## AGREEMENT

"I Charles T. Maston agree to sell my interest in the property at 44 East Elmwood Drive, Centerville, Ohio to my father for a cash settlement of $6000.00 and the right to live at residence above free rent until I am again able to find gainful employment."

Charles T. Matson

This document bears no date. The Debtor testified the document was executed at the time of the conveyance to his father.

Also submitted at trial by the Trustee was a precursory "drive-by" appraisal of the property by a real estate broker, estimating that the Maston residence would probably sell for $50,000 to $55,000 depending on the condition of the property inside the house. The appraiser testified that a similar house on the same block had sold for $53,000 in 1983. He further testified the property value would have been the same in 1981. Charles disputed this, stating that the comparable house sold had been in better condition and had extras or additions. He then estimated the value of the family house at $45,000 for the entire interest.

At the time of the conveyance, the property was subjected to a mortgage, upon which there is an outstanding balance of $9,000 to $10,000. This was not listed in the bankruptcy proceeding as a debt, although Charles was not released from his obligation under this mortgage by the mortgagee. The evidence in regard to this mortgage is very tenuous, and no finding can be made therefrom.

Further testimony by Charles revealed that the $6000 consideration referred to in the agreement was not paid in cash to him. He testified that he did receive the benefit of his father's paying his living and other expenses. No accounting details or documentation was presented to establish the value thereof, or any relationship to the $6000 sales price. Charles estimated the total value of his share of the living expenses at $27,000.00 by conjectural computations.

Eugene did pay attorney fees for Charles arising from a felony indictment in Hamilton County, Ohio. At the pretrial conference, these fees were represented as $6,000. At the trial, however, both Charles

and his father stated that the attorney fees paid by Eugene amounted to about $3500.

The father also helped with payments on the Debtor's van, and an undetermined amount of medical bills, in addition to the household expenses.

The Trustee claims that the transfer was fraudulent under O.R.C. § 1336.04 because it was made without fair consideration at a time when the debtor was either insolvent, or thereby rendered insolvent.

Defendants Charles and Eugene Maston deny that the transfer was fraudulent, claiming it was supported by the father's payment of the debtor's bills, and a credit for uncharged rent.

## OPINION

There is no issue raised by the Defendant as to his insolvency. He has freely admitted this fact by his testimony.

Section 1336.04 of the Ohio Revised Code provides:

§ 1336.04 **Conveyances resulting in insolvency.**

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

The issue then is whether the Debtor received fair consideration for the transfer of his one-quarter interest in property to his father.

■ Due to the conflicting and inconclusive testimony adduced at trial, but interpreting the evidence most favorably in behalf of the defendants, the most the court can establish is that the debtor conveyed his entire undivided interest in real property valued at approximately $12,000, subject to a mortgage, receiving at various times before and after the conveyance the benefit of his father's payment of his attorney fees valued at $3500 and payments on his van. Although his father stated at trial that he also paid "other bills," he did not present

sufficient proof as to their existence or amounts.

Testimony at trial was thus inconsistent with statements made at the pretrial hearing and the provisions contained in the agreement to convey.

The latter purported to convey the property in consideration for $6000 cash and free rent. The $6000 was not paid to Charles. It is apparent that defendants' "consideration" as urged at the trial was not that originally contemplated at the time of transfer.

On the facts, the Court finds that fair and adequate consideration was not given.

■ Although not raised by the Trustee, the Court must also find the conveyance fraudulent under O.R.C. § 1336.07 which provides, as follows:

§ 1336.07 **Intent to defraud.**

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present or future creditors.

Because actual intent to defraud is difficult to prove and seldom admitted, courts have traditionally designated various facts and circumstances as "badges" or "indicia" of fraud, which justify and require a Court to set aside a conveyance as fraudulent to creditors. See 24 O.JUR.3d *Creditors' Rights* §§ 754 et seq. The following have generally been held to be indicative of fraud: pendency of a suit against the debtor at the time of transfer, *Barr v. Hatch*, 3 Ohio 527 (1828); transfer of the debtor's entire estate, *Id.*, *Crumbaugh v. Kugler*, 2 Ohio St. 373, 374 (1853); transfers between related parties, *In re Russo*, 1 B.R. 369 (Bankr.E.D.N.Y.1979), *In re Lester*, Case No. 18378 (Bankr.S.D.Ohio at Dayton, 1965); lack of adequate consideration, *In Re Poole*, 15 B.R. 422 (Bankr.N.D.Ohio 1981); and reservation of benefits to the transferor or his family, *Berry v. Hass*, 12 Ohio C.C. 189, 5 Ohio Cir.Dec. 48, (Huron Cty, 1895). See, also *Trinity Baptist*

*Church of Bradenton, Fla., Inc.* 25 B.R. 529 (Bankr.M.D.Fla.1982).

Although when considered separately, such "badges" of fraud may not be conclusive, taken together with "other suspicious circumstances," the combination has uniformly been held to be sufficient to show fraud and invalidate the transfer of property. See *In re Poole*, 15 B.R. at 431–32.

From this Court's determination of the facts, *all* of the above stated indicia of fraud were present at the time of the transfer. It is noted that a lawsuit against the debtor in the amount of $100,000 was pending when the debtor's entire estate was transferred; that the transfer was between a father and son; and that debtor conveyed property reasonably valued at approximately $12,000 in exchange for a cash consideration of only one half this amount. Furthermore, the debtor reserved the right to live in the house which he had conveyed for an indefinite time, rent free.

"Generally, if a person conveys property wholly or in substantial part, in consideration of an agreement to support him in the future, and by the conveyance renders himself unable to pay his debts, the conveyance is invalid as to existing creditors." 24 O.JUR.3d, *Creditors' Rights*, § 765. This conclusion is supported by several cited older Ohio cases, and consistent with decisions throughout the country in other jurisdictions too numerous to cite herein.

In *Berry v. Haas*, cited *supra*, the father deeded property valued at $8,560 but encumbranced to the extent of $6,400, to his son to whom he owed $1200. The son assumed the encumbrances and the father retained a life estate in the property. The court typically held that the transfer was a constructive fraud upon his creditors.

A similar decision was reached in *Akron Bldg. & Loan Assoc. v. Foltz*, 36 [26] Ohio C.C. 572 (Summit (8th) C.C. 1908). There, for consideration of $2,000 and an agreement to support his sister for the remainder of her life, debtor's brother received $18,000. The Court stated "however laudable it may be for him to provide for his sister and, however nearly commensurate with his undertaking this compensation may be, the transaction cannot stand at the expense of [her] creditors. She must pay her creditors before she provides for her own future." *Id.* at 574–75.

In the instant case, it is clear that debtor conveyed his interest in the property and yet retained all benefits to live in the premises with "free rent." "No effort of a debtor to hinder or delay his creditors is more severely condemned by law than an attempt to place his property where he can enjoy it, but require his creditors to await his pleasure for the payment of their claims out of it." 24 O.JUR.3d *Creditors' Rights* § 777. Such is exactly what the debtor has done.

Thus, due to the presence of five "badges" of fraud and other suspicious circumstances, the Court is satisfied that the transfer in question was fraudulent as to debtor's existing creditors, particularly the April, 1982, judgment creditor. That suit was commenced on August 25, 1980, and was pending on the date of the conveyance to his father.

This is an unfortunate case as between father and son. The evidence clearly establishes that the Debtor has been an overwhelming financial burden to his father, who has already born the brunt of assisting his son in supporting himself through periods of unemployment and the defense of a criminal indictment. The son owes his father not only eternal gratitude, but also, financial reimbursement. Unfortunately, when the son conveyed his inherited real estate to his father, the interests of creditors had already vested. The tort lawsuit was already pending for injuries suffered by innocent victims of the son's tortious acts. The noble purpose of the son in transferring the property to his father at that late date cannot by law circumvent his duty to apply his property to existing creditors' claims.

At the time the transfer was made by the Debtor to his father and the claims of existing creditors placed in jeopardy because of the Debtor's insolvency and lack

of adequate earnings, the $6000 in cash was not paid; and, the living expenses now asserted as the fair consideration had not accrued. It is noted that the father was not scheduled as a creditor in the bankruptcy schedules.

Apparently the father was not a conscious participant in the fraudulent transfer; however, the court is constrained to conclude that the primary or only purpose of the conveyance was an intention to defeat the creditors prosecuting the pending lawsuit for tort damages.

## JUDGMENT ENTRY ON THE TRUSTEE'S COMPLAINT TO SET ASIDE FRAUDULENT CONVEYANCE OF REAL ESTATE

In accordance with the Decision and Order entered this date, it is

ORDERED that conveyance by debtor of real estate is avoided as being fraudulent.

IT IS FURTHER ORDERED that the Trustee may sell debtor's interest in real estate for the benefit of all creditors, subject, however, to the provision of 11 U.S.C. § 363(h) and the protection to the co-owner of 11 U.S.C. § 363(i).