McKINLEY FEDERAL SAVINGS AND LOAN, Appellee,

v.

PIZZURO ENTERPRISES, INC. et al.; Pizzuro, Appellant.

[Cite as *McKinley Fed. S. & L. v. Pizzuro Enterprises, Inc.* (1990), 65 Ohio App.3d 791.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 56416.

Decided Jan. 2, 1990.

*Harry Greenfield,* for appellee.
*Robert B. Weltman,* for appellant.

MATIA, Judge.

## I

Third-party claimant/appellant, Frank Pizzuro, appeals from the judgment of the Shaker Heights Municipal Court in favor of plaintiff-appellee, McKinley Federal Savings and Loan.

Appellee bank was a judgment creditor of third-party claimant/appellant's brother, the defendant/judgment debtor, Battista Pizzuro. The judgment was rendered by the Trumbull County Court of Common Pleas and was subsequently transferred to the trial court on July 8, 1988 in the amount of $268,899.45. On the date the judgment was transferred, an execution for levy and sale was filed by appellee bank pertaining to all horses owned by the defendant/judgment debtor at Thistledown Race Track, North Randall, Ohio. On July 11, 1988, Shaker Heights' Chief Bailiff, Kathleen Leishman, who testified at trial, contacted North Randall police to acquire their assistance in executing the levy on July 14, 1988 at the racetrack.

On July 11, 1988 defendant/judgment debtor Battista Pizzuro telephoned the vice-president of Ray Crossen Horse Vans, Inc., James Mussaro, who testified at trial, in order to arrange for the shipping, the same day, of "nine or ten" horses from Thistledown Race Track to Cortland, Ohio, and then to ship them out of state the following day. Mussaro testified that his vans were unable to transport the horses out of state at that time due to scheduling

conflicts. In any event, on July 11, 1988, Mussaro arrived at the racetrack prepared to transport ten horses. The guards at the racetrack informed him that the horses of defendant/judgment debtor Battista Pizzuro could not be removed from the Thistledown grounds because of a debt owed to the track by Battista. Battista had tendered five bad checks to the track, totalling $11,289. On the same day, appellant Frank Pizzuro paid the track $11,289 on behalf of his brother Battista, in exchange for three of Battista's horses: Foxy Fred, Rule the Surge, and Daring Regent. These three horses were later officially appraised at $10,000.

On July 12, 1988, Mussaro returned to the racetrack prepared to transport the horses to Stutzman Farm, in Aurora, Ohio, Battista having changed his mind with regard to destination. All ten horses were transported to Aurora on that date.

On July 14, 1988, Chief Bailiff Leishman, a deputy bailiff, and a North Randall policeman went to Thistledown to levy on the horses. They learned that the horses had already been moved to the farm in Aurora, Ohio. On orders of the trial court, the two bailiffs contacted Aurora police and went immediately to the Stutzman Farm to execute on the levy. Upon arrival, Chief Bailiff Leishman spoke with Mrs. Lela Stutzman, who pointed to Battista Pizzuro. Battista was at the farm with his brother Nino, who is the alleged horse trainer of third-party claimant/appellant Frank Pizzuro. When Chief Bailiff Leishman approached the two Pizzuros they jumped into a nearby automobile. Leishman ordered Battista to halt, and identified herself, but Battista drove out of the driveway, allegedly almost hitting the chief bailiff on his way out. With Aurora police, a high-speed chase ensued, and Battista was eventually pulled over. Leishman took this opportunity to serve Battista with the levy papers, and then she returned to the Stutzman Farm to enlist Mrs. Stutzman as custodian of the ten horses.

The following morning, July 15, 1988, Chief Bailiff Leishman directed the shipment of the horses to a "safe ranch." On July 16, 1988, Leishman spoke with Ray Crossen of the horse van company, who confirmed to her that Battista contemplated out-of-state transport of the horses at the earliest opportunity.

The trial court scheduled the ten horses to be sold at public auction on August 19, 1988.

We concern ourselves herein only with the third-party claim of Frank Pizzuro, although other claims were filed. On August 1, 1988, appellant Frank Pizzuro filed a third-party claim asserting that three of the horses seized by the trial court and scheduled to be sold belonged not to the underlying defendants, Battista Pizzuro and Pizzuro Enterprises, Inc., but

rather were owned by Frank Pizzuro as of July 11, 1988. Appellee bank answered the third-party claim, contending that the transfer of the three horses from Battista Pizzuro to Frank Pizzuro constituted a fraudulent conveyance. (The three horses alleged to be the property of Frank Pizzuro are those named above in the context of the payment to the track for debts owed by Battista.)

Appellant also filed a "Motion to Dismiss the Levy" and a "Motion to Inspect Property," both of which were denied by journal entries of August 17, 1988 and August 5, 1988, respectively.

Trial on Frank Pizzuro's third-party complaint was held on August 17, 1988. The trial court voided the intrafamilial sale in its judgment entry of August 19, 1988, stating:

"12. Third party claimant, Frank Pizzuro, knew of the indebtedness of his brother judgment debtor Battista Pizzuro, to the judgment creditor before the transfer of the horses.

"13. The horses were moved to the Stutzman farm in Aurora, Ohio, on July 12, with actual intent to hinder, delay or defraud the judgment creditor.

"14. The Court further finds that the conveyance from the judgment debtor to his brother third party claimant was made with actual intent to hinder, delay or defraud the judgment creditor and accordingly said sale is void ab initio. (Sec. 1336.07 ORC).

"15. Third party claim fails."

Appellant filed a motion for new trial on August 31, 1988, and a notice of appeal to this court on September 14, 1988. On September 21, 1988 the trial court, then without jurisdiction, denied appellant's motion. On October 25, 1988, in response to a motion by appellant, this court remanded the case to the trial court and on October 31, 1988 the trial court entered a valid denial of appellant's motion for new trial.

Appellant timely evokes our jurisdiction, assigning four errors on the part of the trial court for review.

## II

In his first assignment of error, appellant argues:

"The judgment of the trial court in favor of the plaintiff judgment creditor was contrary to the law and the evidence."

Essentially, it is appellant's position that appellee bank failed to produce sufficient evidence (1) that defendant/judgment debtor Battista Pizzuro, who did not appear for trial, intended to defraud his creditors; and (2) that third-

party claimant/appellant Frank Pizzuro had knowledge of Battista's fraudulent intentions.

■ We first confront the issue of the intent of defendant/judgment debtor Battista Pizzuro. The trial court based its judgment in this case on Section 7 of the Uniform Fraudulent Conveyance Act, R.C. 1336.07, which provides:

"Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present or future creditors."

While the burden of proof under this section generally rests on the party seeking in equity to set aside the fraudulent conveyance, *Stein v. Brown* (1985), 18 Ohio St.3d 305, 308, 18 OBR 352, 355, 480 N.E.2d 1121, 1123, to prove the elements of the fraud by clear and convincing evidence, *In re Poole* (Bankr.Ct., N.D. Ohio 1981), 15 B.R. 422, 431, courts have recognized that, with respect to the issue of "actual intent," direct proof may be impossible. As stated by the Ohio Supreme Court in *Stein, supra,* 18 Ohio St.3d at 308–309, 18 OBR at 355, 480 N.E.2d at 1124:

"* * * Due to the difficulty in finding direct proof of fraud, courts of this state began long ago to look to inferences from the circumstances surrounding the transaction and the relationship of the parties involved. * * *" (Citations omitted.)

The acknowledgement of this difficulty of proof is nothing new in the law, and finds its origins in *Twyne's case* (Star Chamber 1601), 3 Coke's Rep. 80b, 76 Eng.Rep. 809. The court in *Poole, supra,* 15 B.R. at 431–432, resolved the problem in the following terms:

"In determining whether a conveyance is made with actual intent to hinder, delay, or defraud a creditor, direct evidence of fraudulent intent is not essential and, indeed, in most circumstances, not likely to be available. Consequently, certain traditionally designated 'badges' or indicia of fraud, circumstances which usually or frequently attend a conveyance designed to hinder, delay, or defraud creditors, in concert with other suspicious circumstances, have generally been held to be sufficient to show fraud and invalidate the transfer of property. * * *" (Citations omitted.)

See *In re Zurface* (Bankr.Ct., S.D. Ohio 1989), 95 B.R. 527; *In re Zyndorf* (Bankr.Ct., N.D. Ohio 1987), 80 B.R. 876, 879; *In re Betz* (Bankr.Ct., N.D. Ohio 1987), 84 B.R. 470, 472; *In re Maston* (Bankr.Ct., N.D. Ohio 1984), 44 B.R. 880, 882; cf. *Cardiovascular & Thoracic Surgery of Canton, Inc. v. DiMazzio* (1987), 37 Ohio App.3d 162, 524 N.E.2d 915.

The instant case is surrounded by such suspicious circumstances, presenting no fewer than three "badges" of fraud. First, the transaction was between brothers. Intrafamilial conveyances in this context are always "suspect and subject to the strictest scrutiny." *Poole, supra,* 15 B.R. at 432; *Wagner v. Galipo* (Oct. 27, 1988), Cuyahoga App. No. 54538, unreported, 1988 WL 114484, affirmed (1990), 50 Ohio St.3d 194, 553 N.E.2d 610; *In re D.H. Overmyer Telecasting Co., Inc.* (Bankr.Ct., N.D. Ohio 1982), 23 B.R. 823, 919; *Zyndorf, supra; Maston, supra.*

Second, the conveyance occurred at a time when creditors' judgments had already been rendered against defendant/judgment debtor Battista Pizzuro (and probably only in response to the racetrack's retention of the horses for five bad checks tendered to it by Battista Pizzuro). See *Maston, supra; Twyne's case, supra, Overmyer, supra,* at 920 (debtor knew his accounts were being seriously overdrawn); *Poole, supra,* 15 B.R. at 432 (financial picture "was something less than worry free").

Finally, defendant/judgment debtor Battista Pizzuro apparently retained rights, possession and/or control over the three horses in issue. Testimony was adduced at trial indicating that, even after the conveyance, Battista Pizzuro exercised dominion and control over the three horses with respect to their transportation to Aurora, Ohio, and the intended shipment out of state. *Maston, supra* (reservation of benefits); *Zyndorf, supra* (reservation of rights); *Overmyer, supra* (retention of possession); *Twyne's case, supra* (continued exercise of dominion and control).

Upon review of the facts and circumstances presented in the record, we find that appellee bank, for purposes of R.C. 1336.07, sufficiently proved actual intent to defraud on the part of defendant/judgment debtor Battista Pizzuro.

We turn now to the issue of third-party claimant/appellant Frank Pizzuro's assertion that the trial court's judgment was in error since there was no evidence of his knowledge of such actual intent. Frank Pizzuro cites R.C. 1336.09, which provides in part:

"(A) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person *except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase,* or one who has derived title immediately or mediately from such purchaser:

"(1) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim[.]" (Emphasis as in appellant's brief.)

Briefly, we find that knowledge on the part of the grantee of the grantor's actual fraudulent intent is not a necessary element of R.C. 1336.07. See

*Conrad v. Sample* (1958), 107 Ohio App. 66, 7 O.O.2d 399, 156 N.E.2d 748; *City Trust & Savings Bank v. Weaver* (1941), 68 Ohio App. 323, 22 O.O. 529, 40 N.E.2d 953. In *Maston, supra,* 44 B.R. at 884, a fraudulent conveyance under R.C. 1336.07 was found even though the third-party grantee "was not a conscious participant in the fraudulent transfer." Rather, it would appear that the above-emphasized portion of R.C. 1336.09 is more in the nature of an exception or defense available to third-party claimants such as appellant Frank Pizzuro. The record does not support a conclusion that such exception had been established. Proof of Frank Pizzuro's knowledge of his brother's actual fraudulent intent is not necessary under R.C. 1336.07.

Accordingly, we find that the trial court's judgment was supported by competent, credible evidence and third-party claimant/appellant's first assignment of error is not well taken.

### III

Appellant contends in his second assignment of error:

"The trial court erred in admitting testimony regarding fraudulent conveyances."

It is appellant Frank Pizzuro's position that (1) appellee bank's answer failed to specifically aver that he knew of fraudulent intent and so the trial court should not have admitted evidence on such issue, and (2) the trial court expressly limited the proceedings to the issue of ownership, and so it was error to admit evidence regarding fraudulent conveyances.

In its answer to Frank Pizzuro's third-party complaint, appellee bank pleaded fraud as an affirmative defense and contended that the transfer of the three horses constituted a fraudulent conveyance. While it is required that there be a specific allegation that a transferee had knowledge of the debtor's fraudulent intent in an action under R.C. 1313.56 and 1313.57, wherein such knowledge of transferee is a material element, such an allegation is not necessary in an action under R.C. 1336.07, wherein such knowledge is not an essential prerequisite. *City Trust & Sav. Bank, supra; Conrad, supra.*

Regarding appellant's argument that evidence of fraud was improperly admitted since the trial court had limited the issue to ownership, we likewise find no error. The ownership of the three horses and the fraudulence of the transaction were issues that were inextricably bound together. It would have been worthless, if not impossible, to speak of one without mention of the other.

██ Appellant suffered no prejudice in the admission of testimony at trial, and we find no abuse of discretion on the part of the trial court. Appellant's second assignment of error is not well taken.

## IV

██ In his third assignment of error, appellant asserts:

"The trial court erred in overruling the third-party claimant's motion to dismiss the levy."

Essentially, appellant argues that the trial court's bailiff exceeded her territorial jurisdiction in executing on the levy, and so the trial court should have granted the motion to dismiss the levy.

The levy, as noted above, was executed at the Stutzman Farm in Aurora, Ohio. Aurora is in Portage County. Portage County is contiguous to Cuyahoga County at the southeast corner of the latter.

R.C. 1901.19 provides in part:

"(A) Subject to the monetary jurisdiction of municipal courts as set forth in section 1901.17 of the Revised Code, a municipal court and a housing division of a municipal court have jurisdiction within its territory in all of the following actions and to perform all of the following functions:

"* * *

"(6) In any action or proceeding in the nature of creditors' bills, and in aid of execution to subject the interest of a judgment debtor in personal property to the payment of a judgment of the court[.]

"* * *

"(B) Subject to the limitation set forth in this division, *a municipal court or a housing division of a municipal court has jurisdiction outside its territory in a proceeding in aid of execution to subject to the payment of the judgment the interest in personal property of a judgment debtor under a judgment rendered by the court* or housing division. *The jurisdiction provided under this division includes the county or counties in which the territory of the court in question is situated and any county that is contiguous to that in which the court is located.* A court or a housing division that has jurisdiction under this division outside its territory in a proceeding in aid of execution has the same powers, duties, and functions relative to such a proceeding that it has relative to proceedings in aid of execution over which it has jurisdiction other than under this division." (Emphasis added.)

Thus, the trial court's bailiff did not exceed her territorial jurisdiction, and the trial court did not err in overruling appellant's motion to dismiss the levy.

Appellant's third assignment of error is not well taken.

## V

In his fourth assignment of error, appellant contends:

"The trial court erred in denying the third-party claimant's motion for new trial."

Appellant argues that there was irregularity in the proceedings of the court, justifying the grant of a new trial. Civ.R. 59(A)(1). The irregularity was said to have occurred as a result of the trial court's admitting evidence on fraud and fraudulent intent when the issue was supposed to be limited to ownership.

As we discussed in Section III of this opinion, the question of whether there was a fraudulent conveyance between the Pizzuro brothers was inextricable from, and dispositive of, the issue of appellant's asserted ownership of the three horses vis-a-vis appellee bank. We find no abuse of discretion in the trial court's denial of appellant's motion to dismiss.

Appellant's fourth assignment of error is not well taken and the judgment of the trial court is affirmed.

*Judgment affirmed.*

JOHN V. CORRIGAN, P.J., and FRANCIS E. SWEENEY, J., concur.