JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiffs-appellants Victor Laurich-Trost, and Arlene Laurich-Trost, administratrix for the estate of Alice Huusare, appeal from the granting of defendants'-appellees' motion for summary judgment.[1] For the reasons adduced below, we affirm.
{¶ 2} A review of the record on appeal indicates that appellants are judgment creditors of CMT, having obtained a judgment in the approximate amount of $100,000 against that corporation on November 12, 1998 in Cuyahoga County Common Pleas Court Case No. 347205.
{¶ 3} The re-filed complaint herein alleged that CMT's president and sole shareholder, Wabnitz, transferred some of the assets of CMT to WS, a business entity which is controlled by Wabnitz, for inadequate compensation so as to defraud, delay, and hinder the judgment creditors from reaching those CMT assets as plaintiffs attempted to execute on their judgment. See count one of the complaint.
{¶ 4} The complaint next alleged that CMT transferred certain assets to JKW for inadequate consideration, without receiving a reasonably equivalent value in exchange for the transfer, with the intent to further frustrate the judgment creditors' attempts to reach those assets. See count two of the complaint.
{¶ 5} Finally, the complaint sought to pierce the corporate veil of CMT and hold Wabnitz personally liable for the allegedly fraudulent transfers of CMT assets. See count three of the complaint.
{¶ 6} On April 30, 2001, defendants filed a joint motion for summary judgment supported by assorted evidentiary material. Plaintiffs filed their brief in opposition to summary judgment, with evidentiary support, on June 11, 2001. Defendants filed a reply brief on June 19, 2001.
{¶ 7} On July 23, 2001, the trial court granted summary judgment in favor of defendants.
{¶ 8} Plaintiffs filed their notice of appeal on August 17, 2001, from the granting of summary judgment.
{¶ 9} Four assignments of error are presented for review. These assignments will be discussed jointly since they each argue the propriety of granting summary judgment. The assignments of error are stated as follows:
 {¶ 10} 1. THE TRIAL COURT ERRED IN FINDING THAT DEFENDANTS WERE ENTITLED TO SUMMARY JUDGMENT AS TO COUNT ONE OF PLAINTIFFS' COMPLAINT WHEN THE COURT DETERMINED THAT NO TRANSFER OCCURRED BETWEEN COATING MEASUREMENT TECHNOLOGIES, INC. AND WORLD SYSTEMS UNDER THE OHIO FRAUDULENT TRANSFER ACT, EVEN AFTER PLAINTIFF FACTUALLY DEMONSTRATED TO THE COURT THE EXISTENCE OF STRONG INDICATIONS THAT SUCH FRAUDULENT TRANSFER HAD OCCURRED.
 {¶ 11} 2. THE TRIAL COURT ERRED WHEN IT DECIDED THAT DEFENDANTS WERE ENTITLED TO SUMMARY JUDGMENT AS TO COUNT TWO OF PLAINTIFFS' COMPLAINT WHEN THE COURT DETERMINED THAT JKW SYSTEMS WAS A BONA FIDE TRANSFEREE UNDER O.R.C. 1336.08 (TOOK IN GOOD FAITH FOR A REASONABLY EQUIVALENT VALUE) WHEN STRONG EVIDENCE EXISTS TO THE CONTRARY, WHICH COULD CAUSE REASONABLE MINDS TO COME TO DIFFERING CONCLUSIONS AS TO WHETHER SAID TRANSFER WAS RECEIVED IN GOOD FAITH.
 {¶ 12} 3. THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT DIETER WABNITZ IS NOT PERSONALLY LIABLE SINCE COATING MEASUREMENT TECHNOLOGIES, INC. IS NOT LIABLE FOR THE TRANSFER.
 {¶ 13} 4. THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO COUNTS ONE, TWO, AND THREE OF PLAINTIFFS' COMPLAINT BECAUSE MATERIAL FACTS EXIST IN DISPUTE FOR THE TRIER OF FACT TO DETERMINE, AND THE TRIAL COURT DID NOT CONSTRUE THE EVIDENCE MOST STRONGLY IN FAVOR OF PLAINTIFFS, WHEN RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.
{¶ 14} The standard of review in instances involving summary judgment was recently stated by this court, as follows:
 {¶ 15} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come but to one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Norris v. Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1, 433 N.E.2d 615; Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 364 N.E.2d 26.
 {¶ 16} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317, 330, 91 L.Ed.2d 265, 106 S.Ct. 2548; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 604 N.E.2d 138.
 {¶ 17} In Dresher v. Burt (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Ohio State Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Media, Ltd. of Texas
(1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Under Dresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." 75 Ohio St.3d at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. 75 Ohio St.3d at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 18} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704, 622 N.E.2d 1153. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in light most favorable to the nonmoving party * * *. The motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v. McFaul (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24; Link v. Leadworks Corp. (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140.
 {¶ 19} As stated above, our review of summary judgment is de novo, therefore, we will give no deference to the decision of the trial court and shall review the circumstances of the case and the record before us on appeal independently.
{¶ 20} Seavert v. Ferraro (Sept. 14, 2000), Cuyahoga App. Nos. 76845 and 76846, 2000 Ohio App. LEXIS 4177 at 4-6.
{¶ 21} The record demonstrates that the plaintiffs obtained the judgment, upon which they now seek execution, on November 12, 1998.
{¶ 22} The record further demonstrates that Wabnitz, as President of CMT, sold a number of CMT assets, generally office furnishings, equipment, and supplies, to JKW on November 18, 1998 for the sum of $9,722. See the itemized Bill of Sale attached to defendants' motion for summary judgment. Wabnitz, as the sole stockholder in CMT, averred that: (1) CMT sold those assets to JKW, a creditor of CMT, in partial satisfaction of an invoice from JKW in the amount of $17,750 involving engineering services related to an infrared system to be installed at CMT; (2) the sales price of $9,722 represented the fair market value of the assets; (3) CMT ceased doing business after the sale of the assets to JKW; (4) JKW was unaware of the litigation herein at the time of the sale; (5) JKW is owned by James K. Wiseman, who is not related to Wabnitz. See Wabnitz affidavit attached to defendants' motion for summary judgment at Exhibit C, C1, and C2.
{¶ 23} The record also demonstrates that Wabnitz filed for individual Chapter 7 bankruptcy in Michigan on February 12, 1999. See Bankruptcy Petition attached to defendants' motion for summary judgment, at Exhibit D. The petitioner listed total assets in the amount of $133,460, and total liabilities in the amount of $397,446, and identified CMT as a defunct corporation with no worth. Id. The plaintiffs' judgments, which are the subject of execution herein, were listed as unsecured claims in a schedule attached to the personal bankruptcy petition. Id. Wabnitz obtained a discharge of debtor order from federal bankruptcy court on July 9, 1999. See Exhibit F attached to defendants' motion for summary judgment.
{¶ 24} In opposition to summary judgment, appellants utilized no affidavits in support of their brief, but did rely upon two sets of discovery responses which were attached to the brief in opposition. The interrogatory responses of JKW indicated, in pertinent part, the following: (1) the sole owner of JKW is James K. Wiseman, a Michigan resident; (2) JKW purchased all of the assets of CMT, which were then leased to World Automation Measurement, Inc.; (3) there is no current business relationship between JKW and CMT, or between JKW/Mr. Wiseman and Wabnitz; (4) JKW is currently a consultant to WS; (5) JKW did not transfer any equipment or parts to WS or Wabnitz at any time; (6) Mr. Wiseman has known Wabnitz for 23 years, and the two have been business partners at times in the past; (7) the CMT assets which were sold to JKW were not removed from CMT's location on Detroit Road in Cleveland.
{¶ 25} The interrogatory responses of WS indicated, in pertinent part, the following: (1) WS, which was incorporated in Michigan, began business operations on November 12, 1998; (2) Wabnitz is the sole shareholder and officer of WS, which is located in Newport, Michigan; (3) WS started business operations on November 12, 1998 at the address on Detroit Road in Cleveland which was formerly the address used by CMT; (4) WS received start-up equipment from fourteen different suppliers, including JKW; (5) WS has not received any equipment from CMT, but did get equipment (the same equipment that JKW purchased from CMT) from JKW/Wiseman; (6) WS leases the business location in Cleveland from T.O.P. Holding; (7) WS has occupied the Cleveland location since November 12, 1998; (8) the current employees of WS who were also employed by CMT include Wabnitz and Tom Belcher; (9) Wabnitz is the highest executive of WS at the Cleveland location; (10) the equipment WS obtained from JKW was at the WS Cleveland location when WS began operations there; (11) Wabnitz invested approximately $2,500 in capital in the start-up of WS.
{¶ 26} In the present action, appellants base their arguments on the Ohio Uniform Fraudulent Transfer Act, specifically actual intent fraud pursuant to R.C. 1336.04(A)(1) and (B)(1)-(11), and 1336.05, which state:
 {¶ 27} S1336.04 When transfer or obligation incurred is fraudulent as to a creditor.
 {¶ 28} (A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:
 {¶ 29} (1) With actual intent to hinder, delay, or defraud any creditor of the debtor;
 {¶ 30} (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies:
 {¶ 31} (a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;
 {¶ 32} (b) The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.
 {¶ 33} (B) In determining actual intent under division (A)(1) of this section, consideration may be given to all relevant factors, including, but not limited to, the following:
 {¶ 34} (1) Whether the transfer or obligation was to an insider;
 {¶ 35} (2) Whether the debtor retained possession or control of the property transferred after the transfer;
 {¶ 36} (3) Whether the transfer or obligation was disclosed or concealed;
 {¶ 37} (4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;
 {¶ 38} (5) Whether the transfer was of substantially all of the assets of the debtor;
{¶ 39} (6) Whether the debtor absconded;
 {¶ 40} (7) Whether the debtor removed or concealed assets;
 {¶ 41} (8) Whether the value of the considerationreceived by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
 {¶ 42} (9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
 {¶ 43} (10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;
 {¶ 44} (11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.
 {¶ 45} S1336.05 Creditors whose claims arose before the transfer or obligation incurred.
 {¶ 46} (A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
 {¶ 47} (B) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the transfer was made to or the obligation was incurred with respect to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.
{¶ 48} The burden of proof in a fraud case rests with the party asserting the fraud. McKinley Fed. S. L. v. Pizzuro Enterprises, Inc. (1990), 65 Ohio App.3d 791.
{¶ 49} In demonstrating actual intent to hinder, delay, or defraud the creditor, appellants point to the so-called "badges of fraud" codified in R.C. 1336.04(B)(1)-(11). In particular, appellants, operating under the belief that CMT (as the putative transferor) transferred assets to WS (the putative transferee), rely upon the following badges of fraud:
 {¶ 50} (B)(1), because "the Transfers at issue went to an insider," the insider being Wabnitz;
 {¶ 51} (B)(2), because "the debtor retained possession and control of the property transferred";
 {¶ 52} (B)(4), because "the transfer had been made, the debtor had been sued";
 {¶ 53} (B)(5), because "the transfer was substantially all of the assets of the debtor"; and,
 {¶ 54} (B)(9), because "the debtor became insolvent after the transfer was made."
{¶ 55} Appellants' brief at 10-11.
{¶ 56} Having set forth inferences of fraud via the illustrated badges above, the burden shifted back to the defense to prove that the transfer was not fraudulent. Baker Sons Equipment Co. v. GSO Leasing,Inc. (1993), 87 Ohio App.3d 644, 650, citing Cardiovascular ThoracicSurgery of Canton, Inc. v. DiMazzio (1987), 37 Ohio App.3d 162, 166.
{¶ 57} The evidence offered to the trial court, when viewed in a light most favorable to the appellants, clearly demonstrates, and the trial court so held, that no transfer occurred between CMT and WS. Notwithstanding the belief of appellants, the transfer of CMT assets was to JKW, who then, according to Mr. Wiseman, leased the assets to World Automation Measurements. There was no direct transfer between CMT and WS, or JKW and WS. There was no evidence to indicate that the CMT to JKW transfer was anything but a facially neutral, arm's length transaction as partial payment on an existing debt owed to JKW. There was no evidence presented by appellants to the trial court to suggest WS was a thinly veiled continuation of CMT's business, nothing in the evidence indicated what these companies did in their operations, or that the transfer of CMT assets to JKW was not made in good faith between CMT and JKW. Further, there is no evidence to suggest that the assets transferred to JKW by CMT was for less than adequate consideration. The record contains no financial evaluation of the CMT assets other than the assets' bill of sale between CMT and JKW. Having failed to maintain its shifting burden of demonstrating that the transfer of CMT assets to JKW was for less than adequate consideration or that the transfer was not made in good faith between JKW and CMT, the inference of fraud is rebutted and the transfer is exempt for purposes of the Uniform Fraudulent Transfer Act. Id.,87 Ohio App.3d at 650-651; R.C. 1336.08. Thus, the first and second assignments of error are without merit.
{¶ 58} Lacking a fraudulent transfer between CMT and JKW, it is axiomatic that Wabnitz cannot be liable as an officer of CMT for a transfer between those two companies. Further, Wabnitz' individual liability for the underlying judgment was discharged in his personal bankruptcy case; therefore his individual liability for the judgment debt, under piercing the corporate veil theory, is equally without merit. The third assignment of error is overruled.
{¶ 59} The fourth assignment of error, inasmuch as it was necessarily involved in the resolution of the other three assignments, is overruled.
Judgment affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
KENNETH A. ROCCO, P.J., and COLLEEN CONWAY COONEY, J., CONCUR.
[1] Defendants-appellees include the following: (1) Coating Measurement Technologies, Inc. ("CMT"); (2) World Systems ("WS"); (3) Dieter Wabnitz ("Wabnitz"); and, (4) J.K.W. Systems ("JKW").