968 F.2d 1216
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Samuel T. ISAAC; Barbara A. Isaac; and Mary Jo Johnson,
Defendants-Appellants.
 No. 91-5830.
 United States Court of Appeals, Sixth Circuit.
 July 10, 1992.
 
 Before JONES and NORRIS, Circuit Judges, and WOODS, District Judge.*
 PER CURIAM.
 
 
 1
 Defendants, Samuel T. Isaac, Barbara A. Isaac, and Mary Jo Johnson, appeal the district court's judgment for the plaintiff in this action to set aside conveyance of real property and foreclose on tax liens. For the reasons that follow, we affirm.
 
 
 2
 * Samuel T. and Barbara A. Isaac ("Taxpayers") operated Samuel T. Isaac & Associates (the "Company"), a mortgage company incorporated in Kentucky and wholly owned by Taxpayers. Mary Jo Johnson is Samuel Isaac's sister. She had been a real estate agent in Florida and was, at one time, an assistant vice president of the Company.
 
 
 3
 Taxpayers bought a house and land at 1750 Bryan Station Road in Lexington, Kentucky from Gary Tewell Corporation on March 6, 1965. Taxpayers lived at the Bryan Station property from 1965 to 1973, at which time they moved into a new home at 2113 Lakeside Drive. Taxpayers rented the house on Bryan Station Road to various people, including Johnson when she moved from Florida to Lexington in 1976. Johnson lived at 1750 Bryan Station Road from 1976 to 1984, at which time Taxpayers moved back in because they had lost their house at 2113 Lakeside Drive to foreclosure.
 
 
 4
 By a deed dated April 5, 1982 and recorded May 10, 1982, Taxpayers conveyed their property at 1750 Bryan Station Road to Johnson. At the time, Samuel Isaac was aware that he was under investigation for fraud in Illinois and Ohio. In June of 1982, Isaac was indicted in Illinois on charges of embezzlement in connection with his activities related to arranging financing for United Auto Workers Local 974 to fund a housing project. In September of 1983, Isaac was indicted again in Illinois, in connection with a senior-care project in Joliet, Illinois, for which he was arranging financing for the Lutheran Welfare Services.
 
 
 5
 Taxpayers filed a 1979 income tax return on February 17, 1983. The United States made an assessment of deficiency of $33,617 on April 4, 1983. On April 3, 1984, the United States filed a lien in Fayette County, Kentucky on Taxpayers' property. That same month, Isaac pleaded guilty in both criminal fraud cases; he was sentenced to five-years probation, fined $5,000, and directed to make restitution of $209,000. On July 14, 1987, the United States filed a lien against the property at 1750 Bryan Station Road and against Johnson as nominee or alter ego of Taxpayers.
 
 
 6
 Throughout this time, and even after the transfer, Taxpayers continued to pay the mortgage, taxes, and insurance on the property. They continued to pay the mortgage, taxes, and insurance on the property. They continued to claim a mortgage interest deduction on their tax returns for the mortgage payments for that property.
 
 
 7
 The United States brought this action on April 4, 1989 in the United States District Court for the Eastern District of Kentucky to reduce to judgment the tax assessment against Taxpayers and to set aside, as a fraudulent conveyance, their transfer of the property at 1750 Bryan Station Road to Johnson. A bench trial was held on January 7, 1991. On June 3, 1991, the district court entered its final judgment in favor of the United States, from which Taxpayers and Johnson appeal.
 
 II
 
 8
 Taxpayers advance two arguments for dismissal based on lack of timeliness. They argue that the government's suit to collect their taxes was untimely under I.R.C. § 6502 (1988) (current version at 26 U.S.C.A. § 6502 (West Supp.1992)), and that the government's request to have set aside as fraudulent their transfer of the property at 1750 Bryan Station Road to Johnson was untimely under Kentucky law.
 
 
 9
 Under the statute applicable at the time, an action for collection of unpaid taxes must commence "within 6 years after the assessment of the tax." I.R.C. § 6502(a)(1) (1988) (amended 1990) (currently provides for ten-year period). The tax was assessed on April 4, 1983. The suit was filed April 4, 1989. The six-year period ran from April 5, 1983 to April 4, 1989. See Fed.R.Civ.P. 6(a) ("In computing any period of time prescribed or allowed ... by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included.").[1] The day of the event that starts the statute running is excluded whether that event is the assessment of the tax or, contemporaneously, the arising of the lien. The section of the Code regarding the duration of the lien, I.R.C. § 6322 (1988), has no bearing on determining the proper time period of the statute of limitations. Accordingly, the action was timely.
 
 
 10
 We also do not accept Taxpayers' argument that the suit should have been dismissed because it was not brought within the limitations period in Kentucky's fraudulent conveyance statute. The United States, as sovereign, is not bound by state statutes of limitations, United States v. Summerlin, 310 U.S. 414, 416 (1940), except where it has expressly bound itself to them.
 
 
 11
 The United States does not bind itself to a state statute of limitations simply because it looks to the state's fraudulent conveyance law when applying I.R.C. § 7403 (1988). Whenever courts apply federal revenue law, state law is controlling as to the nature and extent of the individual's property rights, but federal law determines the consequences of those rights. United States v. National Bank of Commerce, 472 U.S. 713, 722-23 (1985). Thus, state law determines what constitutes a fraudulent conveyance, but federal law determines the timeliness of the action. United States v. Fernon, 640 F.2d 609, 611-12 (5th Cir.1981). Contra United States v. Vellalos, 780 F.Supp. 705, 707 (D.Haw.1992). Accordingly, the United States is not bound by the Kentucky statute of limitations.
 
 III
 
 12
 Taxpayers contend next that the district court erred in denying their motion to dismiss for lack of authorization. The relevant provision reads as follows: "No civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Secretary authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced." I.R.C. § 7401 (1988). The reference to the "Secretary" is to the Secretary of Treasury or his delegate. Id. § 7701(a)(11)(B) (1988).
 
 
 13
 In the instant proceeding, the government alleged that the suit was brought at the request of the Chief Counsel of the Internal Revenue Service and at the direction of the Attorney General. Taxpayers replied in their answer that they were without knowledge sufficient to assess the truth of the government's allegation and, therefore, denied it. Although the government contends that this response did not join the issue, a statement that a party "is without knowledge or information sufficient to form a belief as to the truth of an averment," even standing alone, "has the effect of a denial." Fed.R.Civ.P. 8(b); accord United States v. Twenty-Two Firearms, 463 F.Supp. 730, 731 (D.Colo.1979). "In the absence of a denial, the authorization of the Secretary or his delegate and the direction of the Attorney General or his delegate to commence the action may be presumed." Twenty-Two Firearms, 463 F.Supp. at 731; see also United States v. Twenty-Eight "Mighty Payloader" Coin-Operated Gaming Devices, 623 F.2d 510, 513 n. 2 (8th Cir.1980) (holding that government's allegation of authority in complaint is sufficient unless specifically challenged); United States v. One 1941 Cadillac Sedan, 145 F.2d 296, 299 (7th Cir.1944) (holding that failure to challenge authorization in district court waives right to challenge issue on appeal). Once authorization is denied, however, the United States must show proof of its authority to bring the action. United States v. One 1972 Cadillac, 355 F.Supp. 513, 514-15 (E.D.Ky.1973).
 
 
 14
 In United States v. Walters, 638 F.2d 947 (6th Cir.1981), we held that the first prong of the jurisdictional requirement for bringing a forfeiture action--authorization by the Secretary of the Treasury or his delegate--was met by a letter, authorizing the commencement of the suit, sent by the Regional Counsel of the Bureau of Alcohol, Tobacco, and Firearms to the United States Attorney. Id. at 950. Of course, a letter directly from the Chief Counsel of the Internal Revenue Service would also meet this requirement. See "Mighty Payloader", 623 F.2d at 513 n. 2. The second prong--authorization from the Attorney General--is met because the United States Attorney filed the complaint, and the United States Attorney is a delegate of the Attorney General. See Walters, 638 F.2d at 951.
 
 
 15
 Taxpayers failed to raise the issue of authorization in their written motion to dismiss and supporting memoranda, or in their pretrial memorandum. Taxpayers raised the issue for the first time in an oral motion to dismiss made part way through the trial proceedings. At that time, the United States Attorney responded that "[w]e did receive a suit authorization letter from the Internal Revenue Service." J.A. at 131. Taxpayers neither demanded production of the letter nor presented other evidence that the suit was not authorized.[2] On this record, despite the absence of the authorization letter itself, we cannot find that the district court clearly erred in finding that the suit was authorized.
 
 IV
 
 16
 Taxpayers contend finally that the district court erred in finding that their transfer of the property at 1750 Bryan Station Road to Johnson was fraudulent as to the United States. Where a taxpayer has fraudulently disposed of his property prior to the existence of federal tax liens, the United States may seek relief under the applicable fraudulent conveyance laws of the particular state in which the property is located. United States v. Fernon, 640 F.2d 609, 611-12 (5th Cir.1981); cf. Commissioner v. Stern, 357 U.S. 39, 42-45 (1958) (applying Kentucky law to resolve an issue arising under § 311 of the Internal Revenue Code of 1939).
 
 
 17
 Although fraud involves intent, proof of fraud need not include direct evidence of intent. Bolling v. Adams, 296 S.W.2d 696, 699 (Ky.1956). Instead, courts usually determine the issue on the basis of "badges of fraud." Badges of fraud are "circumstances so frequently attending fraudulent transfers that an inference of fraud arises from them." United States v. Leggett, 292 F.2d 423, 426 (6th Cir.1961), cert. denied, 368 U.S. 979 (1962). A showing of several such badges will make out a strong case. Id. at 427. The transfer of the Bryan Station property from Taxpayers to Johnson was surrounded with badges of fraud: (1) a close relationship between the parties, (2) a transfer for no consideration, (3) the transferors' continued relationship with the property, and (4) each party's awareness of the transferors' increasing financial difficulties.
 
 
 18
 Kentucky courts treat transfers between close family members or people in confidential relationships, in the context of impending financial difficulties, as a badge of fraud:
 
 
 19
 We have often written that courts look with suspicion upon transactions ... between persons occupying confidential relations. When such a transaction is exposed to scrutiny, the burden is always upon the recipient of the property acquired to show that the conveyance was fairly made and not tainted with an intent to accomplish a fraudulent purpose.
 
 
 20
 Bolling, 296 S.W.2d at 699; see also Russell County Feed Mill v. Kimbler, 520 S.W.2d 309, 311 (Ky.1975) (holding that a transfer between persons who are related or occupy a confidential relationship constitutes a badge of fraud); Bank of Josephine v. Hopson, 516 S.W.2d 339, 341 (Ky.1974) (finding that an inter-familial transfer constitutes a badge of fraud); Hayes v. Rodgers, 447 S.W.2d 597, 600 (Ky.1969) (same). Johnson had both a close family relationship and a close working relationship with Taxpayers.
 
 
 21
 A transfer for no consideration or for inadequate consideration is also suspect as a badge of fraud. Bank of Josephine, 516 S.W.2d at 341; Hayes, 447 S.W.2d at 600. The district court found "not credible" Samuel Isaac's and Johnson's testimony that the reason for the transfer was to satisfy a debt owed by the Company to Johnson and concluded that the transfer was "not supported by valuable consideration."[3] J.A. at 30. The district court's conclusion was amply supported by the evidence: inadequate documentation, which is particularly suspect here given that Taxpayers and Johnson are real-estate professionals, and the suspicious circumstance that a Company debt would be paid out of Taxpayers' personal assets.
 
 
 22
 Continued possession by the grantor of the transferred property is another badge of fraud. Bank of Josephine, 516 S.W.2d at 341. Taxpayers and Johnson continued to treat the Bryan Station house as Taxpayers' property. After the transfer, Taxpayers continued to pay the mortgage, taxes, and insurance on the property and continued to claim a mortgage interest deduction on their tax returns for interest on those mortgage payments. When Taxpayers' residence at Lakeside Drive was foreclosed on, Johnson moved out of the Bryan Station house so that Taxpayers could move in. Repairs--the need for which was claimed by the parties as a basis for reducing the value of the property at the time of transfer--were made, by Taxpayers, only after they had moved into the house themselves. Although Taxpayers did not live in the house throughout the period, it was clear that they had access to it when they needed it, which is a practical equivalent of continued possession.
 
 
 23
 Finally, all of these features must be seen in the context of Taxpayers' growing financial difficulties at the time of the transfer. As the district court found, in 1982, Samuel Isaac knew that he was under investigation for fraud; both Isaacs knew that they were facing financial problems and that they were insolvent or virtually insolvent; and Johnson was "aware that her brother and his wife were under extreme financial pressures." J.A. at 31.
 
 
 24
 Whenever a plaintiff seeking to set aside a conveyance supplies evidence of badges of fraud, the burden then shifts to the transferee to prove good faith. Kimbler, 520 S.W.2d at 311; Hayes, 447 S.W.2d at 600. The district court found that Johnson "had notice of the Isaacs' fraudulent intent in transferring the property to her." J.A. at 32. This finding refutes Johnson's claim of good faith. We find this case similar to Bolling, in which Kentucky's highest court stated that
 
 
 25
 [t]he conveyances in this instance occurring inter familia, at such time and under such circumstances as are here shown, call for more satisfying explanations than the mere testimony of the principals, and also call for a greater elaboration of the details of the transactions ... than was exhibited in this case.
 
 
 26
 296 S.W.2d at 699-700. Here, the district court correctly concluded that Taxpayers' transfer of the Bryan Station property to Samuel Isaac's sister was fraudulent under Kentucky law and that the conveyance should be set aside.
 
 V
 
 27
 For the foregoing reasons, the district court's judgment is AFFIRMED.
 
 
 
 *
 The Honorable George E. Woods, United States District Judge of the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Insofar as the parties cite cases decided prior to promulgation of the Federal Rules of Civil Procedure in 1937, those cases are presumed to be superseded
 
 
 [2]
 Although it does not control the outcome of this case, we note that the United States represented that it brought the authorization letter to oral argument. This fact highlights, however, the inefficiency of the approach urged by Taxpayers. Even if we held that the district court erred in relying on the oral, unsworn statement of counsel, we could at most remand for production of the letter or for counsel to be sworn. We decide instead that Taxpayers were required at least to object to the proffered form of proof of authorization. Nonetheless, the better course would be for the government routinely to introduce the authorization letter into evidence
 
 
 [3]
 Based on this finding, we reject Johnson's contention that she is protected by Ky.Rev.Stat.Ann. § 378.010 (Baldwin 1981)