WAGNER et al., Appellees,

v.

GALIPO et al., Appellants.

[Cite as *Wagner v. Galipo* (1994), 97 Ohio App.3d 302.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 65643.

Decided Sept. 2, 1994.

*Marc N. Silberman,* for appellees.

*Paul Mancino, Jr.,* for appellants.

WEAVER, Judge.

Defendants, Charles C. and Maryann Galipo, appeal from the judgment rendered upon a jury determination that their creation of an estate by the entireties was a fraudulent conveyance. For the reasons set forth below, we affirm.

I

The facts preceding the jury trial in this matter have been set forth as follows by the Ohio Supreme Court:

"Plaintiffs-appellees, Paul Wagner and Diane Akins, f.k.a. Diane Wagner ('the Wagners'), obtained a judgment against defendant-appellant, Charles Galipo, for $48,000 ($24,000 for each plaintiff) in a civil action in Cuyahoga County Common Pleas Court on September 20, 1983. On the same day, a judgment lien certificate was recorded in Cuyahoga County. At the time, Galipo was the record owner of an undivided one-half interest in real property located in Pepper Pike, Ohio. His wife, defendant-appellant Maryann Galipo, owned the remaining one-half interest.

"The following day, the Galipos recorded a deed purporting to create in themselves an estate by the entireties in the Pepper Pike property. * * *

"Galipo made no payments on the lien. The Wagners brought a foreclosure action against the Pepper Pike property, seeking to have it sold to satisfy the debt.

"The trial court granted summary judgment in favor of the Wagners. The court of appeals reversed and remanded the cause on the ground that the Wagners failed to support their motion with appropriate documentary evidence. [See *Wagner v. Galipo* (Mar. 27, 1986), Cuyahoga App. No. 51129, unreported, 1986 WL 3728, hereafter referred to as '*Wagner I*.'] On remand, the Wagners again moved for summary judgment, supporting the motion with copies of the original 1968 deed conveying the Pepper Pike property to the Galipos, the judgment lien, and the deed purporting to create an estate by the entireties. The

Galipos filed their own motion for summary judgment, claiming that the estate by the entireties defeated the judgment lien because it was created four hours before the lien was filed.

"The trial court again granted summary judgment for the Wagners, finding 'that the subject property was not an estate by the entireties at the time the judgment of the Plaintiffs attached to this property.' The court ordered a foreclosure sale of Mr. Galipo's interest. The court of appeals reversed and remanded the case for a factual determination as to whether the estate by the entireties was validly created. [See *Wagner v. Galipo* (Oct. 27, 1988), Cuyahoga App. No. 54538, unreported, 1988 WL 114484, hereafter referred to as '*Wagner II.*']" *Wagner v. Galipo* (1990), 50 Ohio St.3d 194, 194–195, 553 N.E.2d 610, 611–612.

Following this court's decision in *Wagner II*, the Wagners appealed to the Supreme Court. The Supreme Court affirmed. *Id.* (The Supreme Court's decision in this matter shall hereafter be referred to as *"Wagner III."*) The matter was then remanded to the trial court for a factual determination as to whether, in view of R.C. Chapter 1336, the Galipos' creation of an estate by the entireties was valid so as to defeat the rights of the Wagners as judgment lien creditors of Charles C. Galipo.

The matter proceeded to a jury trial on January 14, 1993. For their case, plaintiffs presented the testimony of Diane Akins and defendant Charles C. Galipo as if upon cross-examination.

Diane Akins testified that she married Paul Wagner on June 1, 1974. While the couple was en route to Florida for their honeymoon, a tractor trailer struck their vehicle in Lenoir City, Tennessee. They contacted an attorney a short time later.

Akins next established that she and Wagner obtained a judgment in the amount of $48,000 against defendant Charles C. Galipo, a former attorney.

Following this portion of Akins' testimony, the parties entered into a stipulation that, in connection with this action, the plaintiffs recorded a judgment lien in the amount of $48,000 on September 20, 1983 at 2:06 p.m.

Akins next established that she has received nothing from the judgment.

Charles C. Galipo testified as if upon cross-examination that he has not paid any funds on the judgment obtained against him. He further indicated that he has lived at the subject property in Pepper Pike since 1970, and that from the most recent tax records, the property was valued at $275,000.

Galipo next admitted that on September 20, 1983 between 9:00 and 10:00 a.m., he and his wife executed a deed by the entireties for the Pepper Pike property at

the office of their attorney, Mr. Palmeri. Also on this date, Galipo executed a document to remove his name from a bank account which the couple held jointly. He claimed, however, that this was done for estate planning purposes.

Galipo further indicated that he has not had assets since 1986 or 1987, and that he depleted his funds by paying for his children's educations. The couple's current funds are derived from Maryann Galipo.

Income tax returns indicated, however, that the couple had an adjusted gross income of $96,981 in 1991. Approximately $18,000 of this amount was earned by the wife from her employment, but Galipo maintained that his wife inherited the balance of the money from her father. Income tax records also showed that the couple had income of $68,100 in 1990, and $64,240 in 1989.

For their case, defendants presented the testimony of Maryann Galipo, Charles C. Galipo, Dale Galipo, and David Galipo.

Maryann Galipo testified that she and her husband obtained the entireties deed at her request because she did not want their house to be subject to probate in the event that she or her husband died. She claimed that this idea came to her as the result of seeing a commercial by the county recorder and reading a newspaper article on the subject. Mrs. Galipo denied that the deed was executed in order to avoid paying plaintiffs, and she further maintained that her husband set aside money to pay them, but plaintiffs never approached him for payment.

Charles Galipo next testified that at the time plaintiffs obtained the judgment against him, he had approximately $75,000 in savings, but plaintiffs did not contact him for collection upon their judgment at that time. He further stated that they obtained the estate by the entireties deed for estate planning purposes and not to prevent plaintiffs from collecting upon their judgment.

Dale Galipo testified that his father Charles Galipo paid for his undergraduate tuition and living expenses at the University of Michigan, and his law school tuition and living expenses at UCLA. In addition, his father gave him $15,000 to start his own business.

David Galipo testified that he attended Kent State University. The parties stipulated that defendant paid for his tuition and living expenses there. David also testified that after he graduated, his father gave him a gift of $10,000.

Defendants rested following the testimony of David Galipo. Thereafter, plaintiffs presented rebuttal testimony from attorney Marvin Melamed.

Melamed testified that he conferred with his partner, Mr. Sandler, regarding collection upon the judgment obtained against Galipo, and Sandler eventually instructed him to file foreclosure proceedings. The foreclosure action was unsuccessful, however, and, to date, Galipo has paid nothing upon the judgment.

On cross-examination, Melamed indicated that he did not conduct a debtor's examination or pursue other avenues of collection. He explained that garnishment was not invoked because Galipo was no longer working and that Sandler had pursued the matter before ultimately instructing Melamed to focus upon the foreclosure proceedings.

The matter was subsequently submitted to the jury. The jury determined that the transfer was fraudulent, and the trial court issued a foreclosure order against the property. Defendants now appeal, assigning eight errors for our review. For the sake of judicial economy, we will address the assignments of error out of their designated order and have grouped together related assignments of error.

## II

Defendants' fifth and eighth assignments of error are interrelated and state:

"The court committed prejudicial error in overruling a motion for a directed verdict because the plaintiffs failed to prove by clear and convincing evidence all the elements of a fraudulent conveyance."

"The judgment is contrary to law as the creation of an estate by the entireties between the husband and the wife where the property had been previously in the joint name of the husband and wife does not constitute a conveyance under the law."

In the fifth assignment of error, defendants assert that plaintiffs failed to demonstrate by clear and convincing evidence that defendants' creation of the estate by the entireties constituted a fraudulent conveyance, and that the trial court therefore erred in denying defendants' motion for a directed verdict.

A motion for a directed verdict is governed by Civ.R. 50(A)(4), which provides as follows:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and grant a directed verdict for the moving party as to that issue."

Pursuant to this rule, it is the duty of the trial court to submit an essential issue to the jury when there is sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue. See *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 220, 58 O.O.2d 424, 427, 280 N.E.2d 896, 899.

Fraudulent conveyances are governed by R.C. Chapter 1336. As is relevant herein, R.C. 1336.07 provided in relevant part as follows:

"Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present or future creditors." (Pursuant to *Fifth Third Bank of Columbus v. McCloud* [1993], 90 Ohio App.3d 196, 199, 628 N.E.2d 131, 133, the 1990 amendments to R.C. Chapter 1336 cannot be applied to transactions occurring before their enactment.)

In *McKinley Fed. S. & L. v. Pizzuro Enterprises, Inc.* (1990), 65 Ohio App.3d 791, 796, 585 N.E.2d 496, 499–500, this court set forth a creditor's burden of proof pursuant to this statute as follows:

"While the burden of proof under this section generally rests on the party seeking in equity to set aside the fraudulent conveyance, *Stein v. Brown* (1985), 18 Ohio St.3d 305, 308, 18 OBR 352, 355, 480 N.E.2d 1121, 1123, to prove the elements of fraud by clear and convincing evidence, *In re Poole* (Bankr.Ct., N.D.Ohio 1981), 15 B.R. 422, 431, courts have recognized that with respect to the issue of 'actual intent,' direct proof may be impossible. As stated by the Ohio Supreme Court in *Stein, supra,* 18 Ohio St.3d at 308–309, 18 OBR at 355, 480 N.E.2d at 1124:

" ' * * * Due to the difficulty in finding direct proof of fraud, courts of this state began long ago to look to inferences from the circumstances surrounding the transaction and the relationship of the parties involved. * * *.'

" * * * The court in *Poole, supra,* 15 B.R. at 431–432, resolved the problem in the following terms:

" 'In determining whether a conveyance is made with actual intent to hinder, delay or defraud a creditor, direct evidence of fraudulent intent is not essential and, indeed, in most circumstances, not likely to be available. Consequently, certain traditionally designated 'badges' or indicia of fraud, circumstances which usually or frequently attend a conveyance designed to hinder, delay, or defraud creditors, in concert with other suspicious circumstances, have generally been held to be sufficient to show fraud and invalidate the transfer of property * * *.' " (Citations omitted.)

"Badges" of fraud include inadequate consideration, transfer of the debtor's entire estate, the debtor's insolvency as the result of the transfer, the relationship of the parties to the transfer, the debtor's reservation of an interest in the transferred property, and a threat or pendency of litigation. *Spangler v. Redick* (1991), 74 Ohio App.3d 798, 804, 600 N.E.2d 720, 724.

In this instance, plaintiffs presented evidence of four "badges" of fraud. Plaintiffs presented evidence that the Galipos transferred their entire interest in the Pepper Pike property into the estate by the entireties, both spouses retained

interests in the property, and litigation instituted by the Wagners was pending. In addition, plaintiffs presented evidence that the transfer resulted in Charles Galipo's being rendered "constructively insolvent," since the property could no longer be used to satisfy the Wagners' claims without the consent of Maryann Galipo, see *Wagner II* at 8–9, and Charles Galipo transferred away his interest in the Galipos' bank account on the same day. Construing this evidence most strongly in favor of plaintiffs, reasonable minds could come to differing conclusions as to whether a fraudulent conveyance was established. Accordingly, the trial court properly denied defendants' motion for a directed verdict.

▆▆▆ Defendants maintain, however, that there was no transfer of their entire estate, since it remained in their joint names before and after their creation of the estate by the entireties. Similarly, in their eighth assignment of error, defendants maintain that their creation of the estate by the entireties does not constitute a "conveyance" such as to be subject to the Ohio Fraudulent Conveyance Act. In its prior review of this matter, the Supreme Court stated:

"The Galipos initially argue that the creation of a tenancy by the entireties is never a fraudulent conveyance because it is not a 'conveyance' as that term is defined by R.C. 1336.01(B). We disagree.

" * * * Thus, the creation of an estate by the entireties was not a 'rearranging of the joint ownership of the property in question * * *,' as appellants contend, but a *conveyance* of an interest. It is a 'conveyance' as defined in R.C. 1336.01(B)." (Footnote deleted and emphasis *sic.*) *Wagner III, supra,* 50 Ohio St.3d at 196, 553 N.E.2d at 612.

In accordance with the foregoing, we reject these claims.

### III

Defendants' first and sixth assignments of error are interrelated and state:

"The defendants were denied a fair trial when the court permitted irrelevant and inflammatory evidence concerning the present wealth and income of the defendant Maryann Galipo."

"The court committed prejudicial error in allowing the disclosure of privileged information."

In the first assignment of error, defendants maintain that their tax records from 1989, 1990, and 1991 were not relevant and were extremely prejudicial, since the Galipos created the estate by the entireties in 1983. In the sixth assignment of error, defendants assert that the tax records of Maryann Galipo were privileged from disclosure.

■ With regard to the first assignment of error, we note that Evid.R. 611(B) provides that the scope of cross-examination extends to "all relevant matters and [to] matters affecting credibility." Further, under Evid.R. 613(B) and 801(D)(2), the admissions of a party-opponent may be introduced into evidence for purposes of impeachment. In this instance, Charles Galipo testified that he has not had assets since 1986 or 1987, and the admissions contained within the joint tax records of Charles and Maryann Galipo were therefore relevant to Galipo's credibility. Accordingly, we cannot conclude that the trial court abused its discretion in admitting the tax records into evidence.

■ With regard to the sixth assignment of error, we note that Civ.R. 26(B)(1) provides for the discovery of any matter, not privileged, which is relevant to the subject matter involved in the pending action. Further, and notwithstanding defendants' claim to the contrary, it has been held that there is no privilege protecting the production of tax returns in a civil proceeding. See *Mitsui & Co., Inc. v. Puerto Rico Water Resources Auth.* (D.P.R.1978), 79 F.R.D. 72, 80; *McSurely v. McAdams* (D.D.C.1980), 502 F.Supp. 52, 56–57; see, also, R.C. 5747.18 (state tax information may be disclosed in accordance with a proper judicial order). Accordingly, the trial court did not err in ordering production of the disputed tax records.

Defendants' first and sixth assignments of error are overruled.

## IV

Defendants' second and fourth assignments of error are interrelated and state:

"The defendants were denied due process of law when the trial court failed to inform the jury concerning the law with respect to an estate by the entireties as it existed in Cuyahoga County at the time of the transfer in September 1983 and its attachment and foreclosure by a judgment creditor of only one of the owners."

"The court committed prejudicial error in not granting a directed verdict to the defendants based upon the law concerning the involuntary inalienability of an estate by the entireties as it existed in Cuyahoga County in 1983."

Within these assignments of error, defendants maintain that pursuant to this court's determination in *Cent. Natl. Bank of Cleveland v. Fitzwilliam* (July 14, 1983), Cuyahoga App. No. 44429, unreported, 1983 WL 5547, an estate by the entireties creates a one-half interest in each spouse, and this interest can be reached by the individual creditors of that spouse; therefore, Galipo could not, as a matter of law, intend to defraud plaintiffs by executing the entireties deed. Defendants thus assert that they were entitled to jury instructions to this effect

and were also entitled to a directed verdict, since the transfer would not impair the rights of creditors and could not therefore be fraudulent as to creditors.

With respect to procedure, this court notes that Civ.R. 51 governs requests for jury instructions. In pertinent part, this rule provides:

"(A) Instructions; error; record. At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. * * *"

Pursuant to this rule, there is no provision for oral requests for jury instructions. *Holloman v. Rutman Wine Co.* (1983), 11 Ohio App.3d 257, 258, 11 OBR 383, 384–385, 464 N.E.2d 180, 182. The request for specific instructions must be in writing. *Powell v. Turner* (1984), 16 Ohio App.3d 404, 406, 16 OBR 474, 475–476, 476 N.E.2d 368, 370–371. Moreover, where properly requested, the instructions must be correct statements of law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the instruction. See *Murphy v. Carollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828, 832.

Also, with regard to procedure, this court has previously observed in connection with defendants' fifth assignment of error that a motion for a directed verdict will lie where the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion and that conclusion is adverse to such nonmoving party. See Civ.R. 50(A); *O'Day v. Webb, supra.*

With regard to the substantive law as it pertained to estates by the entireties in 1983, there were two reported decisions regarding the right of a creditor of one spouse to foreclose upon the interest of that spouse in an estate by the entireties. In both of those cases, the court concluded that the creditor was precluded from reaching the debtor spouse's interest in the estate. See *Donvito v. Criswell* (1982), 1 Ohio App.3d 53, 1 OBR 286, 439 N.E.2d 467; *Koster v. Boudreaux* (1982), 11 Ohio App.3d 1, 11 OBR 12, 463 N.E.2d 39. However, in an unreported case, *Cent. Natl. Bank of Cleveland v. Fitzwilliam, supra,* this court reached a contrary result and stated:

"The statute [R.C. 5302.17] clearly creates an estate with survivorship. Despite the use of the term 'conveyance,' the interest goes to the survivor.

"It is also clear that the tenancy is joint. * * * The remaining question becomes, then, one of whether creditors can reach such interests. * * * We hold the statute to create a joint tenancy with survivorship reachable by judgment creditors.

"We are aware that such a holding conflicts with that of the Summit County Court of Appeals in *Donvito v. Criswell* (1982), 1 Ohio App.3d 53 [1 OBR 286, 439 N.E.2d 467]. There, the court found R.C. 5302.17 to create an estate protected against execution by the creditors of a single tenant. * * *"

In light of the conflict in the decisional law, this court requested certification of the issue of whether one spouse's creditors could reach the estate, and the Supreme Court determined that the estate could not satisfy the creditors of one spouse without the consent of the other. See *Cent. Natl. Bank of Cleveland v. Fitzwilliam* (1984), 12 Ohio St.3d 51, 12 OBR 43, 465 N.E.2d 408.

In light of all of the foregoing, defendants' characterization of the state of the law in 1983 is incorrect, and our unreported decision was not controlling. See S.Ct.R.Rep.Op. 2(G)(1), which provides in pertinent part as follows:

"An unofficially published opinion shall not be considered controlling authority in the judicial district in which it was decided except between the parties thereto when relevant under the doctrines of the law of the case, res judicata, or collateral estoppel or in a criminal proceeding involving the same defendant[.]"

Applying the foregoing, we note that defendants did not submit a written request for the instruction which they sought regarding the law pertaining to estates by the entireties in 1983. In addition, the instruction which defendants orally sought was not a correct statement of law. The trial court therefore properly denied their request.

Further, construing the evidence presented most strongly in favor of plaintiffs, reasonable minds could reach differing conclusions as to whether the transfer was undertaken with intent to defraud plaintiffs. The trial court therefore properly overruled defendants' motion for a directed verdict.

The second and fourth assignments of error lack merit.

V

Defendants' third assignment of error states:

"The court committed prejudicial error in not defining the term 'insolvency' to the jury as requested by the defendants."

As was noted previously, pursuant to Civ.R. 51(B), there is no provision for oral requests for jury instructions. *Holloman v. Rutman Wine Co., supra.* This requirement was not met in this matter. Moreover, there is no evidence that

defendants were prejudiced in any way from the court's refusal to instruct on the definition of "insolvency."

Defendants' third assignment of error lacks merit.

## VI

Defendants' seventh assignment of error states:

"The court committed prejudicial error in not granting sanctions to the defendants against plaintiffs or their attorneys."

Herein, defendants complain that the trial court erred in denying their motion for sanctions upon plaintiffs' subpoenaing of various records through records-deposition service because plaintiffs obtained these records without providing notice to defendants.

Management of the discovery process lies solely within the sound discretion of the trial court. *Glick v. Marler* (1992), 82 Ohio App.3d 752, 758, 613 N.E.2d 254, 258–259. In this instance, the trial court noted that defendants' attorney "did obtain the document eventually." Moreover, there is no evidence that the trial court acted unreasonably, arbitrarily, or unconscionably. Accordingly, we are unable to conclude that the trial court abused its discretion in connection with the challenged ruling. Cf. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126–127, 482 N.E.2d 1248, 1251–1252.

Defendants' seventh assignment of error is overruled.

*Judgment affirmed.*

KRUPANSKY, P.J., and NUGENT, J., concur.