**UNITED STATES of America,
Plaintiff,**

v.

**Eleanor L. LaBINE, et al., Defendant.**

**No. 3:98 CV 7102.**

United States District Court,
N.D. Ohio,
Western Division.

March 25, 1999.

S. Robert Lyons, Dept. of Justice Tax Division, Washington, DC, for Plaintiff.

Henry Buswell Roberts, Jr., Nathan & Roberts, Toledo, OH, for Defendant.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on cross motions for summary judgment. For the following reasons, the United States' motion for summary judgment is granted. Accordingly, the Defendants' motion for summary judgment is denied. Also before the Court is a motion by the Government to strike the affidavit of Robert LaBine, or in the alternative, to reopen discovery as to the issue of the alleged bank account seizure. The United States' motion to strike the affidavit of Robert LaBine is denied, but the Government's motion to reopen discovery solely on the bank account issue is granted. Furthermore, Defendants have filed a motion to reopen discovery with respect to the transcripts for the tax years at issue. Defendants' motion is denied for lack of timeliness. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1340 and 1345.

## BACKGROUND

On October 22, 1987, Defendants Nelson E. LaBine (deceased) and Eleanor L. LaBine established the LaBine Family Trust Agreement. Mr. and Mrs. LaBine were both in their eighties when the trust was established. Substantially all of the LaBine's assets, including their residence of 2233 Timberland, Toledo, Ohio, were placed into the trust. Mrs. LaBine received "200 units of beneficial interest", of

nominal value, for the transfer of the residence. Originally, the trust was revocable by the donors during their lifetimes, but on September 16, 1988, the LaBines made the trust irrevocable.

Following the transfer of assets into the trust, Eleanor LaBine's remaining assets consisted of $10.00 in cash, an automobile worth $750.00, and a cemetery lot worth $600.00. No information is provided in the record with respect to the remaining assets of Mr. LaBine after the transfer of the assets. Mr. and Mrs. LaBine continued to live in their home after the transfer of the residence to the trust. During the donors' lifetimes, the trust assets were to be used primarily for their benefit. Upon their death, the trust assets were to be divided amongst the donors' children and their issue.

On or about May 14, 1984, the LaBines filed a petition in the United States Tax Court for redetermination of the remaining deficiencies assessed against them by the IRS for the 1976, 1977, 1978, and 1979 tax years. It was during the pendency of this proceeding in October, 1987, that the trust was created. On March 2, 1988, the Tax Court issued a stipulated decision in which Mr. and Mrs. LaBine, through counsel, agreed that there were "deficiencies in income tax due from [them] for the taxable years 1976, 1977, 1978, and 1979 in the amounts of $3,686.00, $5,054.00, $112.00 and $4,236.90, respectively." Nelson La-Bine died on August 4,1988. On November 17, 1988, the IRS allegedly attached Mrs. LaBine's bank account and seized $211.28. The records of the IRS documents do not indicate that Mrs. LaBine has been credited for this amount, and the IRS denied seizing the funds. The IRS claims that the documentation of the seizure is suspect.

Beginning in January, 1990 through the present day, Eleanor LaBine has made payments of $50.00 per month to the IRS. As of February, 1998, the unpaid balance of the assessments for 1976–1979 tax years totals $31,827.36. On May 22, 1994, the IRS issued a Federal tax lien for the amount of $33,528.70. The United States filed this action on March 16, 1998, alleging that the trust was established for the purpose of hindering, delaying or defrauding the United States Government in the collection of taxes. Defendants maintain that the trust was established as a result of probate problems experienced by La-Bine family members; Mr. LaBine had experienced the death of ten (10) family members and Mrs. LaBine had lost eight (8) family members. Those deaths often resulted in extended and expensive probate proceedings, and thus the LaBines created the trust to avoid a large delay in the probate of their estates. The Defendants assert that the relative closeness between the date that the trust was established and the pending outcome of the Tax Court is merely coincidental.

## DISCUSSION

### A. Summary Judgment Standard

As an initial matter, the Court sets forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. Id. at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c).

*B.   The Prospective Application of the Ohio Uniform Transfer Act*

■ Defendants maintain that Ohio's Uniform Fraudulent Transfer Act of 1990 and not its predecessor, the Uniform Fraudulent Conveyance Act, applies to the instant case. Ohio Rev.Code § 1336, *et seq.* In deciding whether to apply the Ohio Uniform Fraudulent Transfer Act, which superseded the Ohio Uniform Fraudulent Conveyances Act, the Court is controlled by Ohio law on the retroactive application of statutes. Retroactive application of a statute in Ohio is governed by Ohio Revised Code § 1.48 which provides: "A statute is presumed to be prospective in its operation unless expressly made retrospective." The Ohio Uniform Fraudulent Transfer Act does not contain a provision which would expressly give the statute retrospective application. *See generally* Ohio Rev.Code Chapter 1336. Thus, under Ohio Revised Code § 1.48, the Ohio Uniform Fraudulent Transfer Act should not be applied to transfers

which predated its enactment. *Whittaker v. Carmean*, 153 B.R. 985, 989 (Bankr. S.D.Ohio 1993).

The transfer at issue in this matter took place on October 22, 1987. The Ohio Uniform Fraudulent Transfer Act became effective on September 28, 1990. Therefore, the Act's predecessor, the Ohio Uniform Fraudulent Conveyances Act, must control.[1]

*C.   The Statute of Limitations*

The ancient rule *quod nullum tempus occurit regi* —"that the sovereign is exempt from the consequences of its laches, and from the operation of statutes of limitations"—has enjoyed continuing vitality for centuries. *Guaranty Trust Co. of New York v. United States*, 304 U.S. 126, 132, 58 S.Ct. 785, 788, 82 L.Ed. 1224 (1938). "Citing Blackstone, Mr. Justice Story noted nearly 175 years ago that the reason for the rule was sometimes asserted to be that 'the king is always busied for the public good, and, therefore, has not leisure to assert his right within the time limited to subjects.'" *United States v. Peoples Household Furnishings, Inc.* 75 F.3d 252, 254 (6th Cir.1996) quoting *United States v. Hoar*, 26 F.Cas. 329, 330 (Cir.Crt.D.Mass. 1821). Justice Story was not persuaded by this rationale: "The true reason," he said, ". . . . is to be found in the great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers." *Id.* Accord, *United States v. Weintraub*, 613 F.2d 612, 618 (6th Cir.1979), cert. denied, 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980). *See also United States v. Kirkpatrick*, 22 U.S. (9 Wheat.) 720, 735, 6 L.Ed. 199 (1824) (Story, J.) ("The government can transact its business only through its agents; and its fiscal operations are so various, and its agencies so numerous and scattered, that the ut-

---

1.   Unless otherwise specified in the text of this Memorandum Opinion, references to Ohio Rev.Code § 1336 *et seq.* are references to Ohio's Uniform Fraudulent Conveyances Act, which was in effect until September 28, 1990, when it was superceded by the Uniform Fraudulent Transfer Act.

most vigilance would not save the public from the most serious losses, if the doctrine of laches can be applied to its transactions").

However, a debate has arisen with respect to whether a distinction exists between cases involving the government's common law right to collect on a debt and cases involving a carefully delineated state statutory right. *United States v. Vellalos,* 780 F.Supp. 705, 708 (D.Hawai'i 1992) (finding that the United States had no cause of action under Hawaii's Uniform Fraudulent Transfer Act because of the specific extinguishment provision within the statute which functioned in a similar manner to a statute of limitations but was an element of the statute). In other words, the issue is whether the government's exemption from a state's statute of limitations extends to a situation where a state has enacted a fraudulent conveyance statute, which differs from a mere common law right to collect a debt.

The Sixth Circuit, in an unpublished decision, has held that this is a distinction without a difference. "We ... do not accept Taxpayers' argument that the suit should have been dismissed because it was not brought within the limitations period in Kentucky's fraudulent conveyance statute. The United States, as sovereign, is not bound by state statutes of limitations, *United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940), except where it has expressly bound itself to them." *United States v. Isaac,* 968 F.2d 1216, 1992 WL 159795 (6th Cir.1992). The Court continued by stating that:

> The United States does not bind itself to a state statute of limitations simply because it looks to the state's fraudulent conveyance law when applying I.R.C. § 7403 (1988), [the statute which gives the Government the authority to file a civil action to enforce a tax lien]. Whenever courts apply federal revenue law, state law is controlling as to the nature and extent of the individual's property rights, but federal law determines the consequences of those rights. *United*

*States v. National Bank of Commerce,* 472 U.S. 713, 722–23, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985). Thus, state law determines what constitutes a fraudulent conveyance, but federal law determines the timeliness of the action. *United States v. Fernon,* 640 F.2d 609, 611–12 (5th Cir.1981). *Contra United States v. Vellalos,* 780 F.Supp. 705, 707 (D.Haw.1992). Accordingly, the United States is not bound by the [state] statute of limitations.

*United States of America v. Isaac,* 968 F.2d 1216, 1992 WL 159795 (6th Cir.1992). *See also Goldstein v. United States of America,* 1993 WL 388702 (N.D.Ohio 1993) (finding that the United States' claim that the creation of a trust constituted a fraudulent conveyance is not time-barred because the United States is not bound by state statute of limitations under *United States v. Summerlin,* except where it has expressly bound itself to them).

**D. The Law Regarding Federal Tax Liens**

■ Upon assessment, a federal tax lien attaches to all property and rights to that property belonging to a taxpayer. *See* 26 U.S.C. §§ 6321 and 6322. Generally, a tax lien does not attach to property that a taxpayer previously transferred and which ostensibly no longer belongs to the taxpayer. *Id.* However, if a taxpayer fraudulently disposes of property prior to the existence of federal tax liens, the Government may seek relief under the applicable fraudulent conveyance laws of the state in which the property is located. *Commissioner v. Stern,* 357 U.S. 39, 45, 78 S.Ct. 1047, 1051, 2 L.Ed.2d 1126, 1131 (1958); *United States v. Fernon,* 640 F.2d 609, 611 (5th Cir.1981). Federal law governs the right of the Government to enforce a tax lien; however, the determination of the taxpayers rights over the property are a question of state law. *United States v. National Bank of Commerce,* 472 U.S. 713, 722–723, 105 S.Ct. 2919, 2925, 86 L.Ed.2d 565 (1985); *Aquilino v. United States,* 363 U.S. 509, 513, 80 S.Ct. 1277, 1280, 4

L.Ed.2d 1365 (1960); *United States v. Isaac,* 968 F.2d 1216, 1992 WL 159795 (6th Cir.1992); *United States v. Ambrose,* 782 F.2d 1044, 1985 WL 14094 (6th Cir.1985).

In this case, the property the Government seeks to attach through its tax lien is the LaBine's residence in Ohio. Allegedly, the residence was fraudulently transferred to a trust. As noted above, the applicable law is Ohio's Uniform Fraudulent Conveyance Act, Ohio Revised Code § 1336 *et seq.* Under the Act, fraudulent conveyances may be set aside by creditors. The relevant portions of the Act are as follows:

(A) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such purchaser:

(1) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim; or

(2) Disregard the conveyance and attach or levy execution upon the property conveyed.

(B) A purchaser, who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment.

Ohio Rev.Code § 1336.09. Therefore, if the Government can demonstrate that the conveyance of the residence to the trust was fraudulent, the Government can disregard the conveyance and attach the lien to the property if the there was not a purchaser of the property who paid fair consideration and who did not have actual fraudulent intent.

### E.   Actual Fraud

The Government alleges that Defendants had an intent to defraud under Ohio Rev.Code § 1336.07 which provides:

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present or future creditors.

■■■  Therefore, the three elements for a fraudulent conveyance under the Act are (1) a conveyance; (2) with actual intent to defraud, hinder, or delay; (3) either present or future creditors. *See BancOhio National Bank v. Nursing Center Services,* 61 Ohio App.3d 711, 714–715, 573 N.E.2d 1122, 1124 (1988). The burden of proof under Ohio Rev.Code § 1336.07 rests on the party seeking to set aside the fraudulent conveyance. *Stein v. Brown,* 18 Ohio St.3d 305, 308, 480 N.E.2d 1121, 1124 (1985).

### i.   The Conveyance

Element one is clearly fulfilled because the transfer of the residence to the trust constitutes a conveyance. Ohio Rev.Code § 1336.01 defines conveyance as the "payment of money, assignment, release, transfer, lease, mortgage, or pledge of tangible or intangible property, and also the creation of any lien or encumbrance." Therefore, the transfer of the residence to the trust satisfies the requirement of a conveyance.

### ii.   Actual Intent to Defraud

■■■  The second essential element requires the Government to show actual intent to hinder, delay or defraud. However, proving "actual intent" by direct proof may be difficult. Therefore, the Ohio Supreme Court stated:

Due to the difficulty in finding direct proof of fraud, courts of this state began long ago to look to inferences from the circumstances surrounding the transaction and the relationship of the parties involved.

*Stein v. Brown,* 18 Ohio St.3d 305, 308, 480 N.E.2d 1121, 1124 (1985) citing *Gleason v. Bell,* 91 Ohio St. 268, 110 N.E. 513 (1915). Consequently, certain traditionally designated indicia of fraud, or "badges" have generally been held to be sufficient to show fraud and invalidate the transfer of

property. *McKinley Fed. S. & L. v. Pizzuro Enterprises, Inc.,* 65 Ohio App.3d 791, 796, 585 N.E.2d 496, 500 (1990); *In re Poole,* 15 B.R. 422, 431–432 (Bankr. N.D.Ohio 1981). If the Government is able to demonstrate a sufficient number of badges, which illustrates a fraudulent conveyance by clear and convincing evidence, *Household Finance Corp. v. Altenberg,* 5 Ohio St.2d 190, 214 N.E.2d 667 (1966), then the burden of proof shifts to Defendants to prove that the transferee paid fair consideration for the property and that the transferee took the property without knowledge of the transferor's fraudulent intent. *Cardiovascular and Thoracic Surgery of Canton, Inc. v. DiMazzio,* 37 Ohio App.3d 162, 164, 524 N.E.2d 915, 917 (1987). If the transferee fails to rebut the presumption that the conveyance was fraudulent, then the Government is entitled to judgment. *Id.* Some examples of "badges" of fraud include:

(1) inadequate consideration;

(2) transfer of the debtor's entire estate;

(3) the debtor's insolvency as a result of the transfer;

(4) transactions between members of the same family;

(5) the reservation of an interest in the transferred property;

(6) the existence or cumulative effect or a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors;

(7) whether the debtor retained possession or control of the property transferred after the transfer;

(8) whether the transfer or obligation was disclosed or concealed;

(9) whether the debtor absconded;

(10) whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation incurred;

(11) whether the transfer or obligation was disclosed or concealed;

(12) dealings in cash;

(13) use of dummies or fictitious parties; and

(14) the general chronology of the events and transactions under inquiry.

*See Cardiovascular & Thoracic Surgery of Canton, Inc. v. DiMazzio,* 37 Ohio App.3d 162, 166, 524 N.E.2d 915, 918 (1987); *Conti v. Commissioner,* 39 F.3d 658 (6th Cir. 1994), cert. denied, 514 U.S. 1082, 115 S.Ct. 1793, 131 L.Ed.2d 722 (1995); *United States v. Leggett,* 292 F.2d 423, 426–427 (6th Cir.1961) cert. denied, 368 U.S. 914, 82 S.Ct. 194, 7 L.Ed.2d 131 (1961); *United States v. Mantarro,* 72 A.F.T.R.2d 93–6428, 1992 WL 551483 (N.D.Ohio 1992); *In re Poole,* 15 B.R. 422, 431–432 (Bankr. N.D.Ohio 1981); *Wagner v. Galipo,* 97 Ohio App.3d 302, 309, 646 N.E.2d 844, 849 (1994); *Ransier v. McFarland,* 170 B.R. 613, 626 (Bankr.S.D.Ohio 1994) citing *Profeta v. Lombardo,* 75 Ohio App.3d 621, 625, 600 N.E.2d 360, 363 (1991). *See also* Ohio Rev.Code § 1336.04 of the Ohio Uniform Fraudulent Transfer Act for a non exhaustive list of the badges of fraud.

The Government alleges that the following badges exist in this matter:

(1) The residence was transferred to the trust during the pendency of the Tax Court case.

(2) The residence was transferred to the trust for inadequate consideration.

(3) The residence was transferred to the trust of which Eleanor LaBine was a beneficiary and her children the trustees.

(4) At one point in time, the LaBines had the power to withdraw the residence from the trust.

(5) Eleanor LaBine continued to live in the residence after it was transferred to the trust.

(6) The transferred residence constituted most of Eleanor LaBine's estate.

(7) Eleanor LaBine was insolvent or rendered insolvent by the transfer of the residence to the trust.

The record indicates that the above badges of fraud exist in this matter. Thus, if the third element is also satisfied, the Government has provided proof by clear and convincing evidence of fraud which shall have the effect of shifting the burden to the Defendants to demonstrate that the trust paid fair consideration for the property and took the property without knowledge of Defendants' fraudulent intent.

### iii. Present or Future Creditors

The final element requires that the intent to defraud either present or future creditors. The United States qualifies as a present creditor. Ohio Rev.Code § 1336.01 defines "creditor" as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." In an action to show a fraudulent conveyance, "the United States is deemed a creditor with standing to institute such an action from the date the taxes become due and owing." *United States v. Mantarro*, 72 A.F.T.R.2d 93–6428 (N.D.Ohio 1992) citing *Simpson v. United States*, 89 U.S. Tax Cas. 9285 (M.D.Fla 1989). *See United States v. Hickox*, 356 F.2d 969, 972 (5th Cir.1966).

■ The Government was a present creditor as to the 1976, 1977, 1978, and 1979 income taxes at the date the residence was transferred into the trust. The United States is deemed a creditor for income taxes on the last day of the taxable period, which is no later than the date the return is originally due. *United States v. Adams Bldg. Inc.*, 531 F.2d 342, 343 n. 2 (6th Cir.1976). Therefore, on October 22, 1987, the date of the transfer of the residence into the trust, the United States was a present creditor. Accordingly, the third and final prong of Ohio Rev.Code § 1336.07 is fulfilled. The Government has fulfilled its burden of showing that the transfer was fraudulent under Ohio's Uniform Fraudulent Conveyances Act.

### iv. Shifting the Burden

The Government has satisfied the following elements: (1) a conveyance, (2) significant badges of fraud, and (3) that the United States is a present creditor. Therefore, the burden is shifted to the Defendants to demonstrate that the trust paid fair consideration of the residence and that it took the property in good faith.

■ The consideration for the transfer of the residence was equal to 200 units of beneficial interest. The value of the units appears to be symbolic rather than having any significant monetary value. The document evidencing that units of beneficial interest exist states that the units are non-transferable. Additionally, the units become null and void upon the death of the holder.[2] Therefore, as the value of the units appear to be nominal, as they cannot be sold and they become extinguished upon Mrs. LaBine's death, and the Trust beneficiaries become the sole beneficial owners of the Trust assets, the transfer of the residence to the trust was not for adequate consideration. Although there is no direct evidence that the property was taken by the trust in bad faith, it is sufficient that the trust obtained the property without providing adequate consideration to prohibit Defendants from fulfilling their burden. The Government has established that the transfer of the residence to the trust was fraudulent, and the Defendants have not sufficiently satisfied their burden of demonstrating otherwise.

### F. Fraud Without A Showing of Actual Intent

Even if the Government had failed to demonstrate a fraudulent conveyance under Ohio Rev.Code § 1336.07, the Government may alternatively prove that the transfer was fraudulent without making a

---

**2.** The certificate which serves as evidence of the units of beneficial interest references an Exhibit A, which purports to be a table which bears the value of the units once they have been transferred or reassigned by the Trustor. Exhibit A has not been supplied to the Court; however, given the totality of the circumstances, the Court does not feel that the exhibit would demonstrate that the units have any substantial value.

showing of discriminatory intent. Ohio Rev.Code § 1336.04 provides that:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without fair consideration.

Fair consideration is given for property if "in exchange for such property, or obligation, as a fair equivalent therefore, and in good faith, property is conveyed or an antecedent debt is satisfied." Ohio Rev. Code § 1336.03. Furthermore, a person is considered to be "insolvent" when "the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." Ohio Rev.Code § 1336.02.

The consideration for the transfer of the residence was equal to 200 units of beneficial interest. As noted above, the value of the units appears to be symbolic rather than having any significant monetary value. Furthermore, the transfer rendered Mrs. LaBine insolvent because her assets subsequent to the transferred consisted of $10.00 in cash, an automobile worth $750.00, and a cemetery lot worth $600.00. Mr. LaBine's assets were not disclosed in the record, but the Court has been given no reason to believe that Mr. LaBine's assets were any greater than those of Mrs. LaBine. Therefore, the transfer of the residence rendered the LaBines insolvent.

The evidence has established that the transfer of Mr. and Mrs. LaBine's residence was made without sufficient consideration since no value can be ascertained for the units of beneficial interest, and the transfer rendered the LaBine's insolvent. Under Ohio Rev.Code § 1336.04, these two elements are sufficient to demonstrate that the conveyance was fraudulent without a determination of actual intent. Therefore, the Government has shown that the LaBine's residence was fraudulently transferred to the LaBine Family Trust and the Government is thus entitled to summary

judgment as a matter of law. The Government may attach the LaBine's residence through its tax lien because the property's transfer into the trust was fraudulent.

## G. Motion to Strike and to Reopen Discovery

In addition to cross motions for summary judgment, the parties in this matter have made extraneous motions to strike and to reopen discovery. Specifically, the Government has moved to strike the affidavit of Robert LaBine, son of Mr. and Mrs. LaBine. Robert LaBine's affidavit states that "[o]n approximately November 17, 1988, the Internal Revenue Service attached my mother's bank account, no. 30–97063, at Trustcorp. Bank. The IRS seized $211.28. The official transcripts provided by the IRS do not show any credit of this amount." An exhibit is in the record regarding the $211.28 seizure which bears the following words:

> Internal Revenue Service
> Funds Attached by Court
> Carrie Boze Court Clerk

Defendants are seeking credit for the seized amount. The Government challenges the authenticity of the stamp on the exhibit, and requests that it be stricken from the record. In the alternative, the Government requests that the Court reopen discovery solely on the issue of the alleged $211.28 seizure. (A request which, in view of the amount involved, seems curious at best!)

Additionally, Defendants seek additional discovery with respect to the issue of whether the IRS properly assessed the LaBine's taxes within the three-year time period established under 26 U.S.C. § 6501. Specifically, Defendants seek review of the transcripts of the four years in question in order to make this determination.

This Court finds that the matters of the $211.28 seizure and the transcripts are issues that should have been addressed prior to the discovery cutoff date of September 21, 1998. However, whether the IRS seized Mrs. LaBine's bank account is

relevant in determining the total amount of outstanding tax liability currently owed by the LaBines. Therefore, the Government's motion to strike the affidavit of Robert LaBine is hereby denied, and reluctantly, the Court directs that discovery shall be reopened as to that sole issue. Defendants motion to review the transcripts in order to determine whether the IRS properly assessed the LaBine's taxes within the required time period is denied as untimely.

### CONCLUSION

For the foregoing reasons, the United States' motion for summary judgment as to the issue of whether Mr. and Mrs. LaBine's residence at 2244 Timberlawn, Toledo, Ohio was fraudulently transferred into the LaBine Family Trust is granted. (Doc. No. 15). Accordingly, Defendants' cross motion for summary judgment is denied. (Doc. No. 20). The Government's motion to reopen discovery as to the issue of the bank account seizure is granted, but the Government's motion to strike the affidavit of Robert LaBine is denied. (Doc. No. 21). Furthermore, the Defendants' motion to reopen discovery as to the transcript for the tax years at issue is denied. (Doc. No. 23).

IT IS SO ORDERED.