OPINION
Anthony and Esther Lee, plaintiffs-appellants, appeal a decision of the Franklin County Court of Common Pleas. We affirm.
On October 2, 1992, Esther Lee was driving a Yugo in downtown Columbus, Ohio when she was rear-ended by a vehicle driven by defendant-appellee David Mendel. Mendel testified that he was traveling about "ten or fifteen miles an hour at most" in a "stop-and-go situation" just prior to running into Esther Lee's vehicle. Esther Lee testified that after the accident her "head was hurting" and that the morning after the accident that she was "very stiff and I hurt everywhere. I couldn't sit up to get out of bed. I had to roll to get out of my bed. Every movement that I tried to make was difficult, extreme amount of pain at that time." She also testified that she has not "had a day that's been pain-free since the day of the first accident."
On September 15, 1994, Esther Lee (driving a different Yugo) was stopped at a traffic light behind a van driven by defendant-appellee, James Elmore. The van was owned by defendant-appellee, The Association for the Developmentally Disabled ("ADD"). Elmore testified that he was directed to back up the van by a person who was standing in the middle of the street. Elmore stated that he did not see any vehicles behind the van so he "put the van in reverse, kept my foot on the brake, eased up off the brake, and come to find out, that I ended up hitting something."
On March 17, 1997, a third accident occurred involving Esther Lee. She was a passenger in a vehicle driven by her husband David Lee when it was rear-ended by a vehicle driven by defendant-appellee Steven Mango. Mango testified that the accident occurred as he was "letting off the clutch to proceed forward."
On September 6, 1996, appellants filed a complaint against Mendel, Elmore and ADD, claiming that as a result of the accidents, "Esther Lee suffered injuries to her head, neck, shoulders, sternum, ribs and back, causing pain and permanent damage." In the complaint, Esther Lee requested damages of $25,000 against Mendel and $25,000 against Elmore and ADD. As part of her requested damages, Esther Lee claimed that she incurred $13,854.49 in medical expenses from the first accident, and $13,048.57 in medical expenses from the second accident. Anthony Lee requested damages of $25,000 against Mendel and $25,000 against Elmore and ADD for loss of "services and consortium."
Appellants filed a motion to amend their complaint on February 20, 1998, to include the March 17, 1997 accident. Appellants' motion to amend the complaint was granted by the trial court, and the amended complaint added Mango as a defendant. In the amended complaint, Esther Lee requested damages of $25,000 against Mango; and Anthony Lee requested damages of $25,000 against Mango.
A trial was held before a jury. Appellees stipulated to being negligent in each of the three accidents. On September 14, 1998, the jury found against Mendel for $2,000, against Elmore and ADD for $1,890, and in favor of Mango. The trial court filed a judgment entry on October 5, 1998 in favor of Mango and against appellants. The trial court filed a second judgment entry on November 6, 1998 in favor of Mendel, Elmore, and ADD, and against Anthony Lee. The judgment entry also was in favor of Esther Lee in the amount of $2,000 against Mendel and $1,890 against Elmore and ADD. Appellants appeal these judgments and present the following five assignments of error:
Assignment of Error I
 The trial court erred in allowing an expert to testify in violation of Evidence Rules 702 and 703.
 Assignment of Error II
 The trial court erred by refusing to charge the jury on permanency of plaintiff/appellant Esther Lee's injuries.
 Assignment of Error III
 The trial court erred by submitting verdict forms to the jury as to whether or not the defendant/appellees were negligent, when the defendant/appellees all admitted negligence.
 Assignment of Error IV
 The trial court erred by not instructing the jury that the medical bills introduced into evidence were reasonable and necessary and that none of the bills was disputed.
 Assignment of Error V
 The verdicts of the jury are against the manifest weight of the evidence.
Appellants argue in their first assignment of error that the trial court erred in allowing Dr. John Wiechel to testify as an expert witness. Appellants contend that Dr. Wiechel "did not possess the requisite information to express any opinion as to the impact of the vehicles and the extent of damage or whether or not there was any basis to tell the jury that no one should have sustained injury in the collisions."
"Reviewing courts should be slow to interfere with a court's determination concerning the admissibility of evidence unless the court has clearly abused its discretion and the party has been materially prejudiced thereby." Reinoehl v. TrinityUniversal Ins. Co. (Sept. 30, 1998), Franklin App. No. 98AP-155, unreported (1998 Opinions 4658, 4666), discretionary appeal not allowed (1999), 84 Ohio St.3d 1505. Evid.R. 702 states:
Testimony by Experts
 A witness may testify as an expert if all of the following apply:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply;
 (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 (2) The design of the procedure, test, or experiment reliably implements the theory;
 (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.
"Determinations of expert witness qualifications to testify are within the discretion of the trial court." State v. Awkal (1996),76 Ohio St.3d 324, 331, certiorari denied (1997), ___ U.S. ___,117 S.Ct. 776. The qualification of an expert witness will not be reversed unless there is a clear showing of an abuse of discretion on the part of the trial court. State v. Staton (July 12, 1999), Butler App. No. CA98-08-176, unreported, following State v. Maupin
(1975), 42 Ohio St.2d 473; State v. Minor (1988), 47 Ohio App.3d 22.
In the present case, Dr. Wiechel testified concerning his qualifications to be considered an expert witness. Dr. Wiechel stated that he was a mechanical and biomechanical engineer with a company that investigates accidents and that he had worked with the National Highway Traffic Safety Administration. He also stated that he had a bachelor's degree, master's degree, and a doctorate degree in mechanical engineering. He also testified that he was:
 * * * a member of the Society of Automotive Engineers, the American Society of Mechanical Engineers, the National Society of Professional Engineers, the Association for the Advancement of Automotive Medicine.
 And as part of that work, I'm also the Chairman for the United States Delegation To The International Standards Organization Committee on Pedestrian Test Procedures.
* * *
Dr. Wiechel further stated that his doctoral dissertation was "on modeling the human chest for impact applications, so that being that I developed a computer model of the chest for both the front and side directions, so that we could determine what would happen to a person in the impact situations." Dr. Wiechel testified that he had conducted crash tests, observed crash tests, and has been involved in the design of car crash dummies. He also testified that he had been involved with the reconstruction of approximately 2,500 different vehicle accidents during an eighteen year period. He further testified that he had studied biomechanical engineering, which includes the study of a biological system, internal biomechanics, and how forces relate to and cause injury.
Dr. Wiechel testified that in his reconstruction of the first and second accidents, he reviewed the photographs of the vehicles, the police report, witness statements, and the damage estimates. Dr. Wiechel estimated that the speed of Mendel's vehicle in the first accident to be "a little under four miles an hour" and that Esther Lee "experienced an average acceleration of about two g's." Dr. Wiechel further stated that:
 I would not expect injury to occur with these accelerations in this impact, and the reason being that the magnitude of the accelerations are not in excess of what I would expect to occur in an everyday normal life.
Dr. Wiechel compared the amount of acceleration Esther Lee experienced in the first accident to the acceleration experienced from "hard shoes walking on the concrete floor." He stated that the amount of acceleration she experienced in the second accident was "less than the acceleration you would experience at the head — as you are going downstairs."
After having reviewed Dr. Wiechel's testimony and his qualifications as an expert witness, we find that the trial court did not abuse its discretion in allowing Dr. Wiechel to testify as an expert witness. Additionally, appellants were given an opportunity to cross-examine Dr. Wiechel in order to attempt to disprove his conclusions. Accordingly, appellants' first assignment of error is overruled.
Appellants argue in their second assignment of error that the trial court erred by refusing to charge the jury on the permanency of Esther Lee's injuries. However, a review of the record shows that appellants failed to submit to the trial court a proposed written jury instruction regarding the permanency of Esther Lee's injuries. Civ.R. 51(A) states in part:
 Instructions; error; record. At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies shall be furnished to all other parties at the time of making the requests.
* * *
"Unless a jury instruction is requested in writing, Rule 51(A) precludes an error in the instruction given from being addressed on appeal." Armstrong v. Kittinger (Sept. 21, 1994), Summit App. Nos. 16124, 16378, unreported. See, also, Wagner v. Galipo
(1994), 97 Ohio App.3d 302, 312. Unless the moving party provides the trial court with a written request for a jury instruction, a reviewing appellate court is unable to determine whether the requested instruction set forth a correct statement of the law.Powell v. Turner (1984), 16 Ohio App.3d 404, 406. Requiring proposed jury instructions to be in writing is also beneficial to other parties because it allows them to have an opportunity to review the proposed instructions. Therefore, since appellants did not provide the trial court with a proposed written jury instruction concerning the permanency of Esther Lee's injuries, we find that the trial court did not abuse its discretion in refusing to instruct the jury concerning this issue. Appellants' second assignment of error is overruled.
Appellants argue in their third assignment of error that the trial court erred by submitting verdict forms "as to whether or not [appellees] were negligent, when the [appellees] all admitted negligence." A review of the verdict forms shows that the jury received forms which stated that each of the appellees were negligent. Additionally, the court instructed the jury: "Now, in this case, as you have been told many times, each of the three [appellees] have admitted that they were negligent as a matter of law. So that first major issue is not for your consideration." Therefore, we find that the trial court did not err because the court never indicated to the jury that the issue of negligence was to be decided by the jury. Additionally, a presumption exists that a jury has followed the instructions given to it by the trial court. State v. Murphy (1992), 65 Ohio St.3d 554,584, certiorari denied (1993), 510 U.S. 834, 114 S.Ct. 109. Appellant's third assignment of error is overruled.
Appellants argue in their fourth assignment of error that the trial court should have instructed the jury that the medical bills introduced into evidence were "reasonable and necessary and that none of the bills was disputed." Appellants objected to the court's jury instructions and requested the court "tell the jury that the charges of the doctors that they are taking back to the jury room are reasonable and necessary." Appellants also argued that the "only verdict forms that should be going back should already indicate liability and should only be requesting the jury to set damages."
"On review, a trial court's jury instructions must be considered as a whole whether or not the instructions `probably misled the jury in a matter materially affecting the complaining party's substantial rights.'" Community Mutual Ins. Co. v.Perkins Plaza, Inc. (June 11, 1999), Erie App. No. E-98-041, unreported, quoting Becker v. Lake Cty. Mem. Hosp. West (1990),53 Ohio St.3d 202, 208. A review of the record shows that even though appellees did not dispute the amount of the medical bills or the necessity of the medical bills, appellees disputed whether appellees' actions resulted in Esther Lee incurring the medical bills. A review of the jury instructions shows that the court instructed the jury that in deciding the "amount of money that will reasonably compensate [appellants] for the actual injury proximately caused by the negligence of [appellees]," the jury was to consider "the reasonable cost of necessary medical and hospital expenses incurred." When considering the court's jury instructions as a whole, we find that the trial court did not err in overruling appellant's objection. Appellant's fourth assignment of error is overruled.
Appellants contend in their fifth assignment of error that the verdicts of the jury are against the manifest weight of the evidence. Appellants state in their appellate brief:
 The court's allowance of Dr. Weichel's [sic] testimony, its failure to instruct on permanency and on the reasonable and necessary medical bills and the court's error in giving the jury a choice of verdict forms that allowed them to find against the [appellants] when the liability was stipulated, deprived [appellants] of a fair trial and resulted in a verdict from the jury that was against the manifest weight of the evidence.
We first note that we have already addressed these issues in our discussion of appellants' other assignments of error. However, in the interests of justice, we will also review the record to determine whether the jury verdict is against the manifest weight of the evidence.
It is well established that where an appellant challenges a trial court's judgment in a civil action as being against the manifest weight of the evidence, the function of the appellate court is limited to an examination of the record to determine if there is any competent, credible evidence to support the underlying judgment. Nwabara v. Willacy (July 29, 1999), Cuyahoga App. No. 74139, unreported, following Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77; C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, 280. Additionally, the "determination of the amount of damages is within the discretion of the trial court, and will be sustained if it is supported by sufficient credible evidence and is not against the manifest weight of the evidence." Hamilton v. Abcon Construction (Nov. 24, 1997), Warren App. No. CA97-03-027, unreported.
A review of the record shows that the jury verdicts are supported by competent, sufficient credible evidence and are not against the manifest weight of the evidence. Photographs of the vehicles show that they sustained little damage in the accidents. Mendel testified that he was traveling only about "ten or fifteen miles an hour at most" in a "stop-and-go situation" just prior to running into the back of Esther Lee's vehicle. Elmore testified that he backed into Esther Lee's vehicle after he "put the van in reverse, kept my foot on the brake, eased up off the brake * * *." Elmore characterized the impact between the two vehicles as a "tap" and that at the time of the impact he was traveling "between one and two miles" per hour. Mango testified that he hit appellants' vehicle "as I was letting off the clutch to proceed forward." Dr. Wiechel testified that he would not expect injuries to occur from accidents similar to appellants' accidents. This evidence supports a finding that appellees' negligent actions did not cause Esther Lee to suffer injuries as serious as she alleged in her complaint. Appellant's fifth assignment of error is overruled.
Accordingly, appellants' assignments of error are overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
LAZARUS, P.J., and BOWMAN, J., concur.